**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert M. TIMCHAK, Appellant.**

Superior Court of Pennsylvania.

Submitted May 20, 2013.
Filed June 28, 2013.

John P. Rutkowski, Philadelphia, for appellant.

Raymond J. Tonkin, District Attorney, Milford, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., PANELLA, J., and COLVILLE, J.[*]

OPINION BY STEVENS, P.J.

This is an appeal from the order entered in the Court of Common Pleas of Pike County denying Appellant Robert M. Timchak's first petition filed under the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–9546. Appellant presents three claims in which he alleges guilty plea counsel provided ineffective assistance of counsel. After a careful review, we affirm.

The relevant facts and procedural history are as follows:

> The instant case arose when the Pike County District Attorney's Office received correspondence on December 17, 2008, from the Catholic Diocese of Scranton, Pennsylvania, which referenced an anonymous letter it had received regarding the online activities of Father Robert M. Timchak ("Appellant"), [who was an ordained Roman Catholic priest at St. Vincent DePaul's parish]. Enclosed with the anonymous letter were explicit photographs of young males who were suspected to be children under the age of 18. The photographs were alleged to have been recovered from social media sites that were linked to the e-mail account of [Appellant]. The anonymous letter and photographs were subsequently provided to the Pennsylvania State Police (PSP).
>
> Pennsylvania State Troopers visited [Appellant] at his residence in St. Vincent's Rectory on April 4, 2009, for an interview with him. [Appellant] admitted that the e-mail address that was referenced in the anonymous letter and linked to the explicit photographs belonged to him. He also stated that the computers at his residence, a desktop and laptop, belonged to him and were in his exclusive possession. [Appellant] consented to a search of both computers by the PSP.
>
> Prior to the examination of his computers by the PSP, [Appellant] advised the Troopers that he had attempted to delete some of the alleged explicit images from one of the computers. Upon examination of the computers by the PSP, explicit images of young males who appeared to be under the age of 18 were retrieved. Dr. Andi Taroli examined the images upon the request of the PSP, and found them to be photographic depictions of males under the age of 18. The photographs were also forwarded to the National Center for Missing and Exploited Children (NCMEC), who identified the underage males as being child abuse victims previously identified by law enforcement.

Lower Court Opinion filed 10/17/12 at 1–2.

Appellant was charged with seventeen counts of sexual abuse of children, 18 Pa. C.S.A. § 6312, which constituted one charge for each picture found on Appellant's computers, one count of criminal use of a communication facility, 18 Pa.C.S.A. § 7512, and one count of tampering or fabricating physical evidence, 18 Pa.C.S.A. § 4910. On August 26, 2010, Appellant, who was represented by John Petorak, Esquire, proceeded to a guilty plea hearing, at which Appellant entered a plea of guilty to all of the charges. In exchange, the Commonwealth recommended the sen-

---

[*] Retired Senior Judge assigned to the Superior Court.

tence for counts eight through nineteen would run concurrently to the sentence imposed by the trial court for counts one through seven. N.T. 8/26/10, guilty plea hearing, at 3–4. In all other respects, Appellant's guilty plea remained open, with the sentence to be determined by the trial court. N.T. 8/26/10, guilty plea hearing, at 3–4.

On November 17, 2010, Appellant, who was still represented by Attorney Petorak, proceeded to a sentencing hearing, at the conclusion of which the trial court imposed an aggregate sentence of six months to seventy-two months in prison. Appellant did not file a timely direct appeal.

On October 24, 2011, Appellant, with the assistance of new counsel, John P. Rutkowski, Esquire, filed a counseled PCRA petition. Additionally, on that same date, Appellant filed a counseled "Motion for Recusal of Trial Judge," seeking the recusal of the Honorable Joseph F. Kameen, who sat for Appellant's guilty plea and sentencing hearings, from presiding over the PCRA proceedings. By order entered on November 29, 2011, Judge Kameen granted Appellant's request for his recusal, and Appellant's case was reassigned to the Honorable Gregory H. Chelak.

On January 19, 2012, Appellant filed a counseled, amended PCRA petition, and on May 17, 2012, the matter proceeded to an evidentiary PCRA hearing before Judge Chelak. At the conclusion of the hearing, by order entered on August 10, 2012, the PCRA court denied Appellant's PCRA petition, and this timely, counseled appeal followed. The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the PCRA court filed a responsive Pa. R.A.P. 1925(a) opinion.

██ As indicated *supra*, on appeal, Appellant presents three issues alleging the ineffective assistance of guilty plea counsel. In reviewing such issues, we are guided by the following general legal precepts:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

*Commonwealth v. Anderson,* 995 A.2d 1184, 1189 (Pa.Super.2010) (citations omitted).

To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.

It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah,* 42 A.3d 335, 338 (Pa.Super.2012) (citations, quotation, and

quotation marks omitted). "[T]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made." *Anderson*, 995 A.2d at 1192 (citations, quotation, and quotation marks omitted). Moreover, with regard to the prejudice prong, where an appellant has entered a guilty plea, the appellant must demonstrate "it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial." *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa.Super.2006) (quotation and quotation marks omitted).

Appellant first contends his guilty plea counsel, Attorney Petorak, was ineffective in failing to discuss with Appellant any possible defenses, failing to participate in discovery, and failing to conduct any investigation. Specifically, Appellant contends that, despite the fact he told Attorney Petorak he wished to plead guilty, Attorney Petorak "still had a duty to effectively defend [Appellant] through participation in discovery and investigation so that he could intelligently discuss how the Commonwealth would attempt to prove their case [at trial] and how [Appellant] could challenge that evidence through the use of various defense expert witnesses." Appellant's Brief at 10.

It is well-settled that:

Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. As noted, an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it.

*Commonwealth v. Basemore*, 560 Pa. 258, 289–290, 744 A.2d 717, 735 (2000) (citations omitted). *See Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761 (2004) (holding the reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation).

During his extensive oral guilty plea colloquy, after being informed of the elements of the charges filed against him, and the facts as alleged by the Commonwealth to support the charges, Appellant affirmatively indicated that he was guilty of the charges. N.T. 8/26/10, guilty plea hearing, at 1–6, 11, 13, 16. Appellant denied he was forced to plead guilty, and he confirmed he was satisfied with Attorney Petorak's representation. N.T. 8/26/10, guilty plea hearing, at 8, 13. Additionally, Appellant completed a written guilty plea colloquy in which he affirmatively acknowledged, *inter alia*, he was waiving his right to present any possible trial defenses and he had adequate time to consult with his attorney.

During the PCRA evidentiary hearing, Appellant testified he told Attorney Petorak about the police's investigation, including the fact the police had received an anonymous letter, the police had inter-

viewed him, and the police had seized his computers. N.T. 5/17/12, PCRA hearing, at 4–11. Prior to entering his guilty plea, Appellant met with Attorney Petorak approximately three times, spoke with him on the telephone four or five times, and engaged in three email correspondences. N.T. 5/17/12, PCRA hearing, at 11. With regard to the hiring of defense expert witnesses in the event Appellant proceeded to trial, Appellant admitted Attorney Petorak told him "this would be something that you would do." N.T. 5/17/12, PCRA hearing, at 12. However, Appellant subsequently testified Attorney Petorak did not discuss with him any defenses at all. N.T. 5/17/12, PCRA hearing, at 19–20. Appellant testified Attorney Petorak told him that, if he went to trial, he believed the jury would convict him "in three minutes" based on the Commonwealth's evidence, including the photographs seized from Appellant's personal computers. N.T. 5/17/12, PCRA hearing, at 22. Appellant admitted he pled guilty because he believed the Commonwealth had a strong case and it was in his best interest to plead guilty. N.T. 5/17/12, PCRA hearing, at 21–22. Appellant admitted that, with the assistance of Attorney Petorak, he reviewed the written guilty plea colloquy prior to pleading guilty, and Attorney Petorak answered all of his questions. N.T. 5/17/12, PCRA hearing, at 42–43.

Attorney Petorak confirmed he met with Appellant. N.T. 5/17/12, PCRA hearing, at 60. He testified it was his understanding from the beginning that Appellant wanted to negotiate a plea in the matter. N.T. 5/17/12, PCRA hearing, at 60. He explained that he did not seek suppression or engage in lengthy discovery because he was seeking the Commonwealth's cooperation in negotiating a favorable plea for Appellant and did not want to "start fighting with the District Attorney." N.T. 5/17/12, PCRA hearing, at 60. The following relevant exchange occurred between Attorney Petorak and Appellant's PCRA counsel in this regard:

**Q:** And you didn't ask for [the photographs] because you believed [Appellant] wanted to plea?

\* \* \*

**A:** I went to the State Police barracks with an associate of ours ... and [the police] showed me the photographs. Viewing the photographs and from the Affidavit of Probable Cause, the assessment was clear that these were photographs of young boys' penises.

**Q:** But you don't have any experience with digital images, do you? Forensic examination of digital images?

**A:** I know a young boy's penis from an adult penis.

**Q:** Well you know there is software that you can morph images on computers now, that's pretty common.

**A:** I mean I was looking to negotiate a plea. I wasn't looking to challenge whether or not I could get a forensic person to determine whether or not I was incorrect in my assessment of the penises.

**Q:** Alright. So it's your—if I understand what you're saying, based on your life experiences, the photographs you looked at depicted young males under the age of eighteen?

**A:** Correct and the Affidavit of Probable Cause also stated that.

**Q:** And did you ever get a copy of the anonymous photograph that was sent with or the photographs that were sent with the anonymous letter?

**A:** No.

**Q:** Did you ever see that?

**A:** No.

**Q:** Now it's obvious that these photographs went out to the Missing and

Exploited Children Center and were identified in their data base. However, you did not seek an independent person to look at those photographs for the defense?

**A:** No, because [Appellant] had always informed us that he wanted to negotiate a plea in this and again I don't know how they do it where you're from but my experience says that if I fight with [the District Attorney], I'm not going to get the plea agreement that I'm looking for.

**Q:** Just so I don't have to go through every, every bit of evidence like I did with [Appellant], its, suffice to say you didn't ask for discovery. Is that correct?

**A:** I'm aware that Pike County has an open discovery policy that's why I knew if I wanted to view the photographs which I did, I could just contact the State Police. I don't have to file any motion for discovery. It's open discovery. I just go and get it.

**Q:** You didn't review [Appellant's] written statement that he gave to the State Police.

**A:** No, because I had no, at that time, we had no intention of fighting the charges. We were looking to negotiate a plea. That is what I was told from the beginning.

**Q:** So prior to [Appellant] telling you that he wanted to negotiate a plea, did you bring up at all any type of defense for these types of charges?

**A:** It was from the very beginning the conversation always revolved around negotiating a plea.

**Q:** So are you saying that as soon as, the first time he met with you, the first thing he said was "I want to plead guilty to these charges?"

**A:** No. Just as [the ADA] said on direct exam or on cross examination, he said that he wanted to take responsibility for this and to get the best deal that we could get.

**Q:** And how many times did he tell you that?

**A:** How many times did he tell me what?

**Q:** That he wanted to take a plea as opposed to doing any type of defense.

**A:** All he had to tell me was once.

N.T. 5/17/12, PCRA hearing, at 62–65.

Moreover, the following relevant exchange occurred between Attorney Petorak and the Commonwealth at the PCRA hearing:

**Q:** I'm going to call your attention back to the first time that you met with [Appellant]. Do you recall that time and that meeting?

**A:** I do.

**Q:** Okay. During that meeting, can you tell the Court what [Appellant] approached you with as [to] what he wanted to see happen with this case?

**A:** It was always my understanding from [Appellant] that he was looking for the best plea that he could get. There was never discussion that he wanted to fight the charges. It's the reason I waived the Preliminary Hearing.

N.T. 5/17/12, PCRA hearing, at 74–75.

Attorney Petorak confirmed he examined the photographs, which were the subject of the charges, prior to the guilty plea hearing, he reviewed the written guilty plea colloquy with Appellant prior to the hearing, and Appellant never indicated he wanted to proceed with trial. N.T. 5/17/12, PCRA hearing, at 79–80, 84. Attorney Petorak testified he met with Appellant after he pled guilty, but prior to the sentencing hearing, and Appellant never expressed any dissatisfaction with the entry of his guilty plea, he never indicated a lack

of understanding of his guilty plea, and he did not indicate any desire to withdraw his guilty plea. N.T. 5/17/12, PCRA hearing, at 85.

On cross-examination of Attorney Petorak by Appellant's PCRA counsel, the following relevant exchange occurred:

Q: Do you believe that as a criminal defense attorney that you have a responsibility regardless of whether a client wants to enter a plea, to fully investigate the State's evidence and then come back with some kind of information to give a client to make an informed decision?

A: My client informed me that he had committed this crime and he was interested in negotiating a plea.

Q: So your answer is that if your client tells you he wants to negotiate a plea that you don't pursue any discovery or any investigation?

A: I did examine the physical evidence.

Q: And that's it?

A: Yes.

Q: Just the photographs?

A: Yeah.

N.T. 5/17/12, PCRA hearing, at 91.

Furthermore, the relevant exchange occurred between the PCRA court and Attorney Petorak:

Q: Just a few questions Sir. What evidence of the case did you discuss with [Appellant]?

A: I discussed the photographs, Judge, of the discovery of the photographs. I discussed and I believe I discussed with him that it was the Diocese that contacted our office on behalf of [Appellant], the Diocese of Scranton. I went over the Affidavit with him. He admitted that, yes, these pictures were there. He explained how he was having difficulty in determining his sexual background. Did I ever discuss the matter of suppressing evidence or anything? No, because I was from day one, our firm was told that this was by [Appellant] that he wanted to take responsibility through this and that it was going that he wanted to take a plea and that's what we were working on.

Q: Did you have any discussion with [Appellant] about if he proceeded to trial the likelihood of conviction or acquittal?

A: I did do that and he is probably correct, I don't know if these were the terms I used. I said the likelihood of a conviction is very prominent, very prominent that you know you would be convicted on this matter.

Q: Okay. And one other question, did you have any discussion with him during your representation as to any potential defendants, I'm sorry, any potential defenses if he took the case to trial?

A: Throughout the negotiations? Judge, I would probably say no, simply because he never gave any indication whatsoever of going to trial. I mean if he asked a question well, what would my chances [be]? Or what would our defense be? I would have answered. But I never remember it being asked.

N.T. 5/17/12, PCRA hearing, at 91–93.

Based on the aforementioned, we conclude Appellant is not entitled to relief on his first ineffective assistance of counsel claim. First, despite Appellant's claim to the contrary, guilty plea counsel testified he conducted an investigation into the charges against Appellant. Specifically, he viewed the photographs, which were seized from Appellant's computer, and he reviewed the affidavit of probable cause. Guilty plea counsel explained he did not conduct further discovery or an investigation since Appellant adamantly expressed he was guilty, he wanted to take responsibility for his crimes, and he wished to plead guilty. As such, guilty plea counsel

set forth to engage in favorable plea negotiations, and therefore, he had a reasonable basis for not undertaking additional investigation and discovery. *See Basemore, supra.* Additionally, Appellant has failed to allege any beneficial information that guilty plea counsel would have discovered had he undertaken additional discovery and investigation. *See id.* Although Appellant baldly suggests an expert could have assisted Appellant in challenging the evidence, he has failed to identify any expert or discuss precisely how such an expert would have assisted him. Such bald allegations do not entitle Appellant to relief. *See Commonwealth v. Harvey,* 571 Pa. 533, 812 A.2d 1190 (2002). Moreover, although Appellant baldly suggests guilty plea counsel ineffectively failed to advise him of any possible defenses, Appellant does not claim, nor do the facts suggest, the existence of any possible defenses that guilty plea counsel failed to explore. *See Harvey, supra.* Appellant made statements, under oath, at the guilty plea colloquy indicating he was guilty of the charges and, thus, he wished to plead guilty. Appellant is bound by these statements, and he may not now assert grounds for withdrawing the plea which contradict the statements. *See Commonwealth v. Turetsky,* 925 A.2d 876 (Pa.Super.2007). Additionally, inasmuch as Appellant admitted at the PCRA hearing he entered the guilty plea because the Commonwealth had a strong case against him and it was in his best interest to plead guilty, he has not met his burden of proving there is a reasonable probability that, but for counsel's action or inaction, he would not have pled guilty and would have gone to trial. *See Rathfon, supra.*

 Appellant's next claim is guilty plea counsel was ineffective in failing to file a motion seeking to have the trial court judge, Judge Kameen, recuse himself from Appellant's guilty plea and sentencing hearings.

If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This assessment is a personal and unreviewable decision that only the jurist can make....

This Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

*Commonwealth v. Druce,* 577 Pa. 581, 589, 848 A.2d 104, 108 (2004) (quotations, quotation marks, citations omitted).

 Here, assuming, *arguendo,* there is arguable merit to Appellant's contention that guilty plea counsel should have filed a motion seeking the recusal of Judge Kameen from the guilty plea and sentencing hearings,[1] we conclude Appellant has failed

---

1. During the PCRA hearing, Appellant testified he informed guilty plea counsel that he was a substitute teacher for Judge Kameen's child on eight consecutive days during the 2008/2009 school year, and Judge Kameen and his wife had given him a Christmas gift consisting of a glass Christmas tree with hot chocolate and marshmallows in it. N.T.

to demonstrate he suffered prejudice due to guilty plea counsel's failure to request Judge Kameen's recusal from these proceedings. Specifically, Appellant has failed to demonstrate, let alone allege, that, but for counsel's inaction, he would not have pled guilty and would have gone to trial. *See Rathfon, supra.* Moreover, there is no evidence the trial court was biased, unfair, or prejudiced towards Appellant. Appellant baldly asserts Judge Kameen was prejudice against him since he "rejected the plea agreement." *See* Appellant's Brief at 11. However, this is not wholly accurate.

During the guilty plea hearing, guilty plea counsel indicated that, with regard to Counts 1 through 7, Appellant was pleading guilty and "[t]here is no agreed upon Sentence and the Court will decide if in fact these seven Counts should run consecutively or concurrent to each other." N.T. 8/26/10, guilty plea, at 3. With regard to Counts 8 through 19, Appellant was pleading guilty and "the District Attorney is recommending that they would run concurrent to any [sentence] which the Court imposes upon Counts 1 through 7 of the Information." N.T. 8/26/10, guilty plea, at 4.

In sentencing Appellant, Judge Kameen imposed a sentence of three months to thirty-six months in prison as to Count 1, and three months to thirty-six months in prison as to Count 8, the sentences to run consecutively. As to the remaining counts, Judge Kameen imposed a sentence of three months to thirty-six months in prison for each count, the sentences to run concurrently to each other and concurrently to the sentences imposed at Counts 1 and 8. Thereafter, the following relevant exchange occurred between the parties

and Judge Kameen at the sentencing hearing:

**MR. TONKIN:** Your Honor, there's one other matter that I need to bring to the attention of the Court. Your Honor, the agreement reached between the Commonwealth and [Appellant] was that discretion to sentence on Counts 1 through 7 concurrent or consecutive was up to the Court. However, the Court imposed a consecutive sentence on Count 8, that actually—I understand the Court's intention for an overall sentence, but that is not in conformity with our agreement, so I did not know if it was the Court's intention to reject the Commonwealth's agreement or—

**THE COURT:** Could counsel approach the bench? I did it that way only trying to figure out the charges, it seemed liked 1 through 7 were all the set of photographs for the first [victim] and 8 through 17 were photographs for the second [victim] and I understand what the plea agreement says.

Originally, I was going to make it Count 1 and Count 2, but that just hurt the logic of my—so I mean I would impose the same sentence if I needed on 1 and 8 or 1 and 2, but if I do, I'm basically rejecting the plea as it relates to concurrence and consecutive and changing really Counts 8 through 17 were to be concurrent to everything that occurred in 1 through 7.

**MR. PETORAK:** I am not going to change—

**MR. TONKIN:** Well, Your Honor, my always concern is not the lawyer standing before us, it's the lawyers—the jailhouse lawyers that are found in state

5/17/12, PCRA hearing, at 20–21. Appellant testified he provided this information to guilty plea counsel prior to the entry of his guilty

plea, and guilty plea counsel's response was, "We don't want to rock the boat." N.T. 5/17/12 at 21.

prisons are the lawyers that may be found to say well—

**THE COURT:** Let me just stick to this and make it a matter of record. In assessing this sentence, the Court's determination originally was to sentence [Appellant] to a total aggregate sentence of not less than six months nor more than seventy-two and it was going to occur on counts 1 and counts 2, but given my attempt to make it logical and break the offenses into two separate sections [for the victims], I ultimately decided to carry the second portion of it up to Count 8.

If I followed the plea agreement, it would be my intention that [Appellant] would get six months to seventy-two months regardless of what count or counts that I impose. I've addressed that to counsel for [Appellant] in this matter and Mr. Petorak, is it your position at this point that you accept that Court determination and do not wish to withdraw the plea in this matter?

**MR. PETORAK:** I do, Your Honor. I believe the Court's action were in the spirit . . .

N.T. 11/17/10, sentencing hearing, at 40–34.

■ As guilty plea counsel, Mr. Petorak, testified at the PCRA hearing, he believed Appellant "hit a homerun" with regard to sentencing and Judge Kameen's sentence was within the spirit of the parties' plea agreement. N.T. 5/17/12, PCRA hearing, at 69, 87. Thus, we conclude Appellant has failed to demonstrate any prejudice with regard to guilty plea coun-

sel's failure to request Judge Kameen recuse himself from the guilty plea/sentencing proceedings, and therefore, Appellant is not entitled to relief on this claim. *See Rathfon, supra.*

Appellant's final claim is guilty plea counsel was ineffective in failing to inform Appellant that, if he wished to do so, he could withdraw his guilty plea since Judge Kameen did not strictly abide by the parties' plea agreement in imposing sentence.[2]

■ At the PCRA hearing, when asked why he did not inform Appellant specifically that he could withdraw his guilty plea since Judge Kameen had not strictly abided by the parties' plea agreement, guilty plea counsel indicated, *inter alia,* he concluded Judge Kameen had abided by the spirit of the plea agreement, and, to the extent the plea agreement gave Judge Kameen discretion in imposing sentence, Appellant "hit a homerun" in receiving a lenient sentence. N.T. 5/17/12, PCRA hearing, at 68, 87. We agree with the PCRA court that guilty plea counsel provided a reasonable basis in this regard.[3] *Wah, supra.*

For all of the foregoing reasons, we affirm.

Affirmed.

---

**2.** The Commonwealth suggests Appellant has waived this claim by failing to include it in his PCRA petition; however, our review of Appellant's amended PCRA petition reveals the issue was adequately presented therein.

**3.** Moreover, we agree with the PCRA court that Appellant was informed, generally, of his

right to file post-sentence motions and to withdraw his guilty plea. PCRA Court's Opinion filed 10/17/12 at 14–15.