J-A29026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAFAEL RUIZ-FIGUEROA, | |
| Appellant | No. 3118 EDA 2016 |

Appeal from the PCRA Order August 30, 2016
in the Court of Common Pleas of Lehigh County
Criminal Division at No.: CP-39-CR-0000065-2009

BEFORE: LAZARUS, J., PLATT, J.,* and STRASSBURGER, J.*

MEMORANDUM BY PLATT, J.:               **FILED JANUARY 12, 2018**

Appellant, Rafael Ruiz-Figueroa, appeals *pro se* from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A previous panel of this Court set forth the background of this case as follows on direct appeal:

> This matter arises out of the brutal murder of Hungria Santana and the attempted murder of her daughter, Yalibe Feliz, by [A]ppellant, Feliz's former boyfriend.  On September 23, 2011, [A]ppellant entered a guilty plea to one general count of criminal homicide and one count of attempted criminal homicide. Beginning on September 26, 2011, a four-day degree of guilt hearing took place on the charge of criminal homicide.  On September 30, 2011, the trial court determined that [A]ppellant committed first degree murder and sentenced him to life

_____

* Retired Senior Judge assigned to the Superior Court.

imprisonment without the possibility of parole. Appellant was sentenced to a consecutive sentence of no less than 20 nor more than 40 years for the count of attempted criminal homicide. . . .

The trial court recounted the pertinent facts as follows:

On July 25, 2005 at approximately 10 a.m., members of the Allentown Police Department were dispatched to 217 1/2 Railroad Street, Allentown, Lehigh County, Pennsylvania to assist an emergency medical services unit that had been called to the scene. At that location, police were met by the residents of the home and Yalibe Feliz, a neighbor. Ms. Feliz was laying [sic] on her back, moaning and rolling from side to side. The police were able to observe numerous cuts/wounds on Ms. Feliz's body. Ms. Feliz appeared to be losing consciousness and Officer John Blair attempted to ask her questions about who attacked her. Ms. Feliz replied, "My man did it," and mentioned the name "Raffi."

Fearing that the assailant was still in Ms. Feliz's home, the police went to 220 Railroad Street. They observed blood on the front screen door and the front door itself. Inside the home, they observed blood throughout the home, from the dining room to the kitchen area. Inside the kitchen, police located the body of Hungria Santana, Ms. Feliz's mother, lying in a pool of blood, obviously dead.

The police searched the home but were unable to find Ms. Feliz's ex-boyfriend, later identified as the Appellant. Instead, they found a baby asleep on a bed in an upstairs room. Officer Blair took the baby from the bed and gave him to EMS personnel.

The murder scene was processed and various items were collected from Ms. Santan[a] and the scene. Specifically, a bloody knife was recovered from the kitchen area. The knife was 12 inches long, including an 8 inch serrated metal blade, and had a black plastic handle. The knife was submitted for DNA analysis and the DNA was determined to match a sample given by Ms. Feliz.

- 2 -

*    *    *

> . . . Ms. Feliz told [police] everything about the incident and that the baby was still asleep in the house. Ms. Feliz was placed in an ambulance immediately. . . . She was on the threshold of death. During surgery, it was apparent that the stab wound had pierced her pericardium, into her heart. The hole in her heart was ultimately repaired and her blood pressure returned. . . .

(**Commonwealth v. Ruiz-Figueroa**, No. 2856 EDA 2011, unpublished memorandum at *1-2, 4 (Pa. Super. filed Oct. 5, 2012)) (quoting Trial Court Opinion, 1/04/12).[1]

This Court affirmed the judgment of sentence on October 5, 2012. Following Appellant's successful litigation of a PCRA petition, the PCRA court reinstated his right to file a petition for allowance of appeal *nunc pro tunc*. Our Supreme Court denied his petition for allowance of appeal on June 25, 2014. (**See Commonwealth v. Ruiz-Figueroa**, 94 A.3d 1009 (Pa. 2014)).

On May 13, 2015, Appellant filed the instant timely PCRA petition. Appointed counsel filed a motion to withdraw and **Turner/Finley**[2] "no merit" letter on June 23, 2016. On June 28, 2016, the PCRA court granted counsel's

---

[1] The evidence also reflected that Ms. Feliz had obtained a protection from abuse order against Appellant in June of 2005, and that in the days leading up to the murder he told other witnesses that he was watching Ms. Feliz and was going to kill her because he believed she had found another boyfriend. (**See id.** at *3-5, 11-12, 14).

[2] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

motion to withdraw and issued notice of its intent to dismiss the PCRA petition without a hearing. *See* Pa.R.Crim.P. 907(1). Appellant filed an untimely *pro se* response on August 12, 2016.[3] *See id.* On August 30, 2016, the PCRA court entered its order dismissing the PCRA petition. This timely appeal followed.[4]

Appellant raises two issues for our review:

I. Did the court below err when it found trial counsel was not ineffective?

II. Did the court below commit plain error when it accepted Appellant's constitutional waivers?

(Appellant's Brief, at 4) (unnecessary capitalization omitted).

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Brown*, 143 A.3d 418, 420 (Pa. Super. 2016) (citations omitted).

Appellant first argues that trial counsel was ineffective in permitting him to enter a guilty plea under circumstances where he was not competent due

---

[3] We have applied the prisoner mailbox rule to Appellant's filing. *See Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011), *appeal denied*, 46 A.3d 715 (Pa. 2012).

[4] The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal. On October 18, 2016, the court entered an order referring this Court to its June 28 and August 30, 2016 orders for the reasons for its decision. *See* Pa.R.A.P. 1925.

to mental illness. (*See id.* at 9-13). He claims that his waiver of his right to a jury trial and entry of the plea was not the product of a knowing, intelligent, and voluntary decision. (*See id.* at 9-10). This issue does not merit relief.

> To be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111, 1127 (2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987)). Counsel is presumed to have rendered effective assistance. Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the *Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

*Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (some citations and footnote omitted).

> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, **[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea**. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> [T]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made. Moreover, with regard to the

- 5 -

prejudice prong, where an appellant has entered a guilty plea, the appellant must demonstrate it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial.

***Commonwealth v. Timchak***, 69 A.3d 765, 769-70 (Pa. Super. 2013)

(citations and quotation marks omitted; emphasis added).

> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, . . . under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.
>
> A valid guilty plea must be knowingly, voluntarily and intelligently entered. The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement. This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea.

***Commonwealth v. Kelley***, 136 A.3d 1007, 1013 (Pa. Super. 2016) (citations omitted).

Here, the record reflects that, before the guilty plea hearing, Appellant underwent numerous mental health evaluations. Although Appellant was

determined to be incompetent to stand trial at one point, his competency was restored through hospitalization, and he was declared competent on February 10, 2011. (*See* N.T. Hearing, 9/30/11, at 87; Order, 6/28/16, at 2 n.1; Commonwealth's Brief, at 15).

At the September 23, 2011 guilty plea hearing, the trial court reviewed Appellant's mental health history and hospitalizations for his mental illness. (*See* N.T. Guilty Plea, 9/23/11, at 7-10). Appellant relayed that he had been taking medication for one year and six months, that he felt better as a result, that he was "clear headed[,]" and his medication did not interfere with his ability to understand the proceedings. (*Id.* at 9).

The Commonwealth explained that, in exchange for Appellant's entry of the plea, it would withdraw its notice of aggravating circumstances and no longer seek the death penalty. (*See id.* at 2-3). The trial court would determine the degree of guilt on the criminal homicide charge, and Appellant's sentence. (*See id.* at 3).

During the plea colloquy, the trial court advised Appellant of the elements of the charges he faced and the associated penalties, and Appellant admitted to stabbing both of the victims. (*See id.* at 13-20, 29-30). The court thoroughly explained the right to a jury trial and the presumption of innocence, and Appellant stated that he understood that he was giving up his right to be tried by a jury. (*See id.* at 20-22). Appellant also averred that he had fully discussed the evidence in the case and possible defenses with his attorney, and that he was satisfied with counsel's advice. (*See id.* at 25).

Defense counsel indicated that Appellant understood the nature of the charges to which he was pleading guilty, and the consequences of the plea. (*See id.* at 26).

After review of the record, we conclude that Appellant is not entitled to relief on his ineffective assistance of counsel claim. Despite his assertions to the contrary, the record does not reflect that he entered an involuntary guilty plea facilitated by counsel. Rather, it reflects that Appellant voluntarily decided to plead guilty after his competency was restored, in light of the compelling evidence against him and the Commonwealth's intention to seek the death penalty.

Furthermore, Appellant made statements under oath at the guilty plea colloquy indicating that he understood that he was giving up his right to a jury trial, that his medication for his mental illness did not impact his ability to understand the proceedings, and that he was satisfied with counsel's advice. "Appellant is bound by these statements, and he may not now assert grounds for withdrawing the plea which contradict the statements." *Timchak*, *supra* at 774 (citation omitted). Upon review, we conclude that Appellant's underlying claim that his plea was involuntary lacks arguable merit. *See Treiber*, *supra* at 445; *Timchak*, *supra* at 769. Appellant's first issue merits no relief.[5]

_____

[5] Appellant also appears to challenge the effectiveness of PCRA counsel for deciding his ineffectiveness assistance of trial counsel claim lacked merit.

Appellant next contends that the trial court erred in accepting his guilty plea where it was aware that he was seriously mentally ill, on medications, and not competent to enter a knowing, intelligent and voluntary plea. (***See*** Appellant's Brief, at 14-15). This issue is waived.

"To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). "At the collateral review stage, allegations of trial court error are waived, since they were not raised at the first opportunity for review." ***Commonwealth v. Rush***, 838 A.2d 651, 660 (Pa. 2003) (citation omitted).

Here, Appellant could have raised his claim of trial court error in accepting his allegedly defective guilty plea in his direct appeal to this Court, but failed to do so. (***See Ruiz-Figueroa***, ***supra*** No. 2856 EDA 2011, at *6 (challenging only the sufficiency and weight of the evidence supporting his conviction on direct appeal)). Therefore, it is waived, and he is not eligible

---

(***See*** Appellant's Brief, at 13). This issue is waived because it was not raised in Appellant's statement of the questions involved or fairly suggested thereby, nor did Appellant develop it properly in his brief. (***See id.*** at 4, 12-13); ***see also*** Pa.R.A.P. 2116(a), 2119(a)-(c). Moreover, as discussed, we agree with PCRA counsel's assessment that Appellant's claim lacked merit.

for relief on this basis on collateral review. *See* 42 Pa.C.S.A. § 9543(a)(3). Appellant's final issue merits no relief.[6]  Accordingly, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/18

---

[6] Moreover, as detailed above, the record demonstrates that Appellant's guilty plea was valid.