J-A03043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                               :           PENNSYLVANIA
                                                 :
          v.                                :
                                                 :
MAHDI COLLINS                          :
                                                 :
              Appellant           :     No. 705 EDA 2021

Appeal from the PCRA Order Entered March 9, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004071-2017, CP-51-CR-0004072-2017

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                 :           PENNSYLVANIA
                                                 :
          v.                                :
                                                 :
MAHDI COLLINS                          :
                                                 :
              Appellant           :     No. 704 EDA 2021

Appeal from the PCRA Order Entered March 9, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004071-2017, CP-51-CR-0004072-2017

BEFORE: STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:        **FILED FEBRUARY 17, 2022**

     Mahdi Collins (Appellant) appeals from the order entered in the Philadelphia County Court of Common Pleas, denying his first, timely Post Conviction Relief Act[1] (PCRA) petition. Appellant seeks relief from the

---

[1] 42 Pa.C.S. §§ 9541-9545.

judgments of sentence, at two trial dockets, imposed following his open guilty pleas to drug and firearms offenses.[2] On appeal, he contends the PCRA court erred in denying relief on his claim that plea counsel was ineffective for misadvising him on the sentence he would receive. We affirm.

## I. Guilty Pleas & Sentencing

At Docket CP-51-CR-0004071-2017 (Docket 4071), the Commonwealth averred that on March 25, 2017, in Philadelphia, police officers attempted to conduct a vehicle stop of Appellant. PCRA Ct. Op., 7/9/21, at 2, *citing* N.T., 11/27/17, at 13-16. However, Appellant fled on foot and the officers "lost him." *Id.* A search of the vehicle produced: "50 vials of marijuana; a clear sandwich baggie containing whole crack cocaine; [a] sandwich baggie with bulk marijuana; and 15 plastic containers each containing crack cocaine." *Id.*

---

[2] Each trial docket has a separate certified electronic record. The PCRA court issued separate orders, at each docket, denying Appellant's PCRA petition. Accordingly, *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), is not implicated. *See Walker*, 185 A.3d at 977 (when a **single** order resolves issues arising on more than one trial court docket, separate notices of appeal must be filed), *overruled in part*, *Commonwealth v. Young*, ___ A.3d ___, ___, 2021 WL 6062566, *1 (Pa. Dec. 22, 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed).

Nevertheless, we note Appellant properly filed a separate notice of appeal, which listed both docket numbers, at each docket. On December 9, 2021, this Court consolidated the two appeals.

Officers also recovered a .45 caliber semi-automatic handgun with an obliterated serial number. *Id.*

At Docket CP-51-CR-0004072-2017 (Docket 4072), the Commonwealth alleged that two weeks later, on April 8, 2017, officers observed Appellant, who had an active arrest warrant for the first docket, and stopped him. Officers recovered from his vehicle, *inter alia*, more than $1,000, "41 pills of [varying] barbiturates," and approximately 16 grams of crack cocaine. PCRA Ct. Op. at 3, *citing* N.T., 11/27/17, at 13-16. At the time of these offenses, Appellant was on parole.

"[A]t a pretrial conference in the Strategic Management ARC Ready Trial ("SMART") Room[,]" the Commonwealth extended a plea offer that included a recommended sentence of five to 10 years' imprisonment, to be followed by two years' probation. *See* PCRA Ct. Op. at 6. Appellant's assistant public defender at that time conveyed the offer to Appellant's subsequent attorney, another assistant public defender, Gwen Callan, Esquire (Plea Counsel).

Ultimately, however, on November 27, 2017, Appellant appeared before the Honorable Donna Woelpper and entered **open** guilty pleas to the following counts: (1) at Docket 4071, persons not to possess firearms, possession of a firearm with altered manufacturer's number, and possession of a controlled substance with intent to deliver (PWID);[3] and (2) at Docket 4072, a second

---

[3] 18 Pa.C.S. §§ 6105(a)(1), 6110.2(a); 35 P.S. § 780-113(a)(30).

count of PWID. We note Judge Woelpper presided over the plea, sentencing, and instant PCRA proceedings, as well as a prior robbery conviction for which Appellant was serving parole.

The PCRA court summarized that in both the oral and written plea colloquies, Appellant stated

> that no promises were made in exchange for his guilty pleas[, apart from the Commonwealth's *nolle prosequi* agreement for certain charges.] He confirmed that he "thoroughly" reviewed with his counsel the four-page plea colloquy forms, that he understood the content of the colloquy forms, that his pleas were voluntary, and that he knowingly was waiving numerous trial and appellate rights by entering guilty pleas. Appellant specifically testified that he understood that his guilty pleas exposed him to a maximum aggregate sentence of [40] years' incarceration.[ ]

**See** PCRA Ct. Op. at 3, 12, *citing* N.T., 11/27/17, at 8-13.

On March 2, 2018, the trial court conducted a sentencing hearing. Plea Counsel presented mitigation evidence. The parties disputed Appellant's prior record score for sentencing guideline purposes. Plea Counsel believed the prior record score was a "5." If so, "the recommended minimum sentence under the [sentencing] guidelines was 60 to 72 months' incarceration, plus or minus 12 months." PCRA Ct. Op. at 4. Meanwhile, the Commonwealth believed Appellant was a repeat felony offender[4] (RFEL), based on a prior

---

[4] **See** 204 Pa. Code § 303.4(a)(2) ("Repeat Felony 1 and Felony 2 Offender Category (RFEL)") (offender who has previous convictions or adjudications for Felony 1 and/or Felony 2 offenses, which total 6 or more points in the prior record, shall be classified in the repeat Felony 1 and Felony 2 Offender Category").

adjudication in another county. If this were the case, then "the recommended minimum sentence under the guidelines was 72 to 84 months' incarceration, plus or minus 12 months." ***Id.***, *citing* N.T., 3/2/18, at 4-5. Plea Counsel advised the court they lacked documentation confirming whether Appellant was a RFEL,[5] but she would not seek a continuance because she was "asking for a below-mitigated guidelines sentence . . . either way." PCRA Ct. Op. at 4, *citing* N.T., 3/2/18, at 4. The Commonwealth recommended a sentence of six to 12 years. "Without determining whether Appellant was a RFEL," the trial court sentenced [Appellant] to an aggregate term of five to 20 years' incarceration. PCRA Ct. Op. at 4, *citing* N.T., 3/2/18, at 30-31.

On March 12, 2018, Appellant filed a timely post-sentence motion, arguing, *inter alia*: (1) his prior record score was in dispute; (2) he presented "a substantial amount of mitigation" and he had accepted responsibility; and (3) the imposition of consecutive sentences for the two firearms offenses resulted in an excessive sentence. Appellant's Post-Sentence Motions to Reconsider Sentence at 2-3.

---

[5] Appellant later explained that "[t]he disputed charge was a juvenile Robbery (F2)[ in another county, but] there was no documentation of the outcome of the case and whether [Appellant] was adjudicated delinquent. [Plea] Counsel requested documentation of the adjudication of delinquency, but was not provided any." Appellant's Post-Sentence Motions to Reconsider Sentence, 3/12/18, at 2 (unpaginated).

The trial court conducted a hearing on March 23, 2017, at which it resentenced Appellant to six to 12 years' incarceration.[6] The court again did not determine Appellant's proper prior record score, but reasoned this new sentence — with a minimum term of 72 months — likewise was "within the guideline ranges for either scenario." PCRA Ct. Op. at 4 (prior record score of 5 produced a guideline range 60 to 72 months, plus or minus 12 months, while RFEL guideline range was 72 to 84 months, plus or minus 12 months).

## II. PCRA Proceedings

Appellant did not take a direct appeal, but on February 7, 2019, filed a timely *pro se* PCRA petition. Present counsel, Margeaux Cigainero, Esquire, was appointed. She filed an amended petition on September 3, 2019, averring Plea Counsel was ineffective for: (1) advising Appellant to enter "an open guilty plea in order to receive a sentence lower than the 5 to 10 years offered by the" Commonwealth; (2) misinforming him of his offense gravity score and prior record score; (3) misinforming him that if he pleaded guilty, "all of his sentences would run concurrent[ly;]" and (4) not requesting a continuance of the sentencing hearing despite the dispute over his prior record score.

_____

[6] We note the minimum sentence was one year more than Appellant's original minimum sentence, but the maximum sentence was eight years less. Furthermore, the new six-to-12 year sentence was consistent with what the Commonwealth recommended at the first sentencing hearing.

Appellant's Amended Petition for Post-Conviction Relief, 9/3/19, at 2-3 (unpaginated).

The PCRA court conducted an evidentiary hearing on February 12, 2021. We review Appellant's and Plea Counsel testimony in detail.[7] First, Plea Counsel testified that prior to the plea hearing, she retained an expert with a goal of showing Appellant had "simple possession" of the drugs, and not possession with intent to deliver. N.T., 2/12/21, at 13.

> However, . . . the expert concluded that the quantity of drugs was too substantial to support such testimony. [Plea Counsel] also learned . . .that forensic testing found Appellant's DNA on the gun recovered from the vehicle he occupied on March 25, 2017. Accordingly, there was ample evidence supporting the PWID and [firearms] charges. [N.T., 2/12/21, at 12-13.]

PCRA Ct. Op. at 6. Plea Counsel's professional opinion was that Appellant should plead guilty. N.T., 2/12/21, at 13.

Plea Counsel further testified to the following: "The SMART Room [plea] offer sheet" stated Appellant's prior record score was a "5." N.T., 2/12/21, at 16. With this information, Plea Counsel advised Appellant to either accept the Commonwealth's offer or enter an open guilty plea. N.T., 2/12/21, at 17, 24. When asked whether she advised Appellant not to accept the "SMART Room" offer, Plea Counsel responded:

> That was his decision. I said the only chance that he could possibly get [a lower sentence] is to do an open guilty plea and get as much mitigation that I could. I had

---

[7] Appellant and Plea Counsel appeared by video.

> our social worker do a mitigation packet, and then she did like 15 interviews with him, talked to his family, got all the documentation that we could. [T]hat was the only chance we could get lower [sic]. You could get higher, but if you want to take the risk, that's the whole thing. [***Id.*** at 17.]
>
> [Plea Counsel further] testified that she discussed with Appellant that he was already serving parole on a prior sentence for felony-one robbery and conspiracy to commit robbery, that the prior sentence carried a probation tail, and that his guilty pleas could result in a probation revocation and a parole "hit" ─ *i.e.*, additional incarceration time. [N.T., 2/12/21, at 24.] Part of [Plea Counsel's] strategy was to mitigate Appellant's incarceration exposure by ensuring he would serve no additional time upon a probation revocation. [***Id.*** at 26-27. Plea Counsel] therefore recommended that Appellant enter his guilty pleas before Judge Woelpper, who was the "back judge" supervising his probation in the robbery case. Upon a probation revocation, [the c]ourt could have resentenced Appellant to a maximum of 20 years' incarceration, but [Plea Counsel] secured an agreement from the Commonwealth whereby the latter would not seek a revocation "on the back case." [***Id.*** at 24-26.]

PCRA Ct. Op. at 6-7.

A pre-sentence investigation report (PSI) was prepared after the November 27, 2017, plea hearing, and it stated Appellant was a RFEL. N.T., 2/12/21, at 16-17. Plea Counsel believed this was incorrect, "contacted the people who did the PSI and requested documentation," but did not receive it, and informed the Commonwealth and trial court of her challenge to the prior record score. *Id.* Nevertheless, Plea Counsel testified,

> prior to both sentencing hearings, [she] discussed with Appellant that he faced higher sentencing guidelines if he was designated a RFEL. However, because [Plea Counsel] was arguing for a sentence much lower than the recommended guidelines for either a RFEL or an offender with a prior record score of 5, and because she submitted ample mitigation evidence, she advised Appellant

- 8 -

that "the best course of action [was] to go forward on an open plea." [N.T., 2/12/21, at 28, 41. Plea Counsel] also explained to Appellant that his sentences on each of the charges could run either concurrently or consecutively. [*Id.* at 30.]

PCRA Ct. Op. at 7 (footnote omitted).

The PCRA court summarized Appellant's testimony as follows:

He claimed he never discussed the Commonwealth's SMART Room offer with [Plea Counsel], who did not represent him when the offer was proposed. [N.T., 2/12/21, at 56-57.] He nonetheless received notice of the offer around July 18, 2017, when he signed a form rejecting the proposal. [*Id.* at 45-46, 52. T]he case was assigned to Judge Schulman. [*Id.* at 57.] Appellant initially intended to proceed to trial, but he decided to plead guilty when [Plea Counsel] "informed [him] that DNA came back on the firearms with [his] DNA along with a few other individual[s' DNA." *Id.* at 46-47, 58.]

According to Appellant, [Plea Counsel] advised him to plead guilty before Judge Woelpper rather than Judge Schulman because Judge Woelpper "is lenient and . . . will understand mitigation." [*Id.* at 47-48. Plea Counsel] advised she would request a sentence of [1] to [2] years' incarceration, and that Appellant "would receive no more" than a "sentence of . . . four to eight years[." *Id.* at 51.] Appellant testified that he initially opposed [Plea Counsel's] proposal and "asked her can she get with the assigned ADA and try to work a negotiated plea." [*Id.* at 61.] Appellant knew he was already on parole and would also serve probation, but he denied discussing with [Plea Counsel] that his guilty pleas would impact his parole and probation. [*Id.* at 62-63.[FN]]

_____

[FN] The court ordered probation to continue on Appellant's other matter. [N.T., 3/2/18, at 32.]

_____

Regarding the sentencing guidelines, Appellant claimed [Plea Counsel] told him that his prior record score was 5, and that he "would receive no more than four to eight years no matter what." [N.T., 2/12/21, at 52-53.] However, Appellant also testified that he understood during the plea colloquy that he faced

an aggregate sentence of 40 years' incarceration, not four to eight years' incarceration. [*Id.* at 68-69.]

PCRA Ct. Op. at 7-8 & n.5.

On March 9, 2021, the PCRA court entered the two underlying orders, one at each docket, dismissing Appellant's PCRA petition. Appellant filed two timely notices of appeal, and subsequently filed Pa.R.A.P. 1925(b) statements.[8]

_____

[8] At each docket, on April 13, 2021, the PCRA court directed Appellant to file a Rule 1925(b) statement within 21 days, or by May 4, 2021. However, although Attorney Cigainero did not seek any extension of time, she did not file the Rule 1925(b) statements until June 10th. Generally, such an untimely filing would waive all issues on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues . . . not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

However, before we find waiver for non-compliance with a Rule 1925(b) order, we must confirm the clerk of courts has complied with the docketing requirements of Pa.R.Crim.P 114(C), which provides: "The docket entries **shall** contain . . . the date of service of the [court] order[.]" *See* Pa.R.Crim.P 114(C)(2)(c) (emphasis added); ***Commonwealth v. Hess***, 810 A.2d 1249, 1254 (Pa. 2002) (where docket sheet did not indicate the date of service of Rule 1925(b) order, Pennsylvania Supreme Court was "unable to ascertain the date upon which [the a]ppellant was purportedly served with the trial court's 1925(b) order and, therefore, simply cannot conclude when, if ever, the [filing] period under Rule 1925(b) began to run").

At both trial dockets, the docket entries for the Rule 1925(b) orders indicate that they were entered on April 13, 2021. However, in contravention of Rule 114(C)(2), the docket entries do not state the date of service upon the parties. Under these circumstances, we decline to find waiver for an untimely Rule 1925(b) statement. *See Hess*, 810 A.2d at 1252-53.

Finally, we note that even if we were to conclude Attorney Cigainero filed an untimely Rule 1925(b) statement, depriving Appellant of appellate review, we could find *per se* ineffectiveness, from which Appellant is entitled
*(Footnote Continued Next Page)*

### III. Statement of Question Presented

Appellant presents one issue for our review:

Was counsel ineffective for failing to advise [Appellant] of his correct prior record score, correct gravity point score and correct sentencing guidelines prior to [Appellant] pleading guilty in the above-captioned matters?

Appellant's Brief at 4.

### IV. Standard of Review & Relevant Law

This Court has stated:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [a petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.

It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea.

_____

to prompt relief. **See Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) ("[U]ntimely filing of the 1925 concise statement is the equivalent of a complete failure to file. [This is] per se ineffectiveness of counsel from which appellants are entitled to the same prompt relief.").

Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Timchak***, 69 A.3d 765, 769 (Pa. Super. 2013) (citations omitted).

With respect to a claim that counsel's ineffectiveness induced an unknowing or unintelligent plea,

In order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.

***Commonwealth v. Rathfon***, 899 A.2d 365, 370 (Pa. Super. 2006) (citation omitted). A defendant is bound by the statements they make under oath in a plea colloquy, and "may not [later] assert grounds for withdrawing the plea which contradict the statements." ***Timchak***, 69 A.3d at 774.

## V. Appellant's Issue

We first note the entirety of Appellant's argument section spans a page and a half. Appellant's Brief at 9-10. While he sets forth some of Plea Counsel's testimony, as well as relevant law on ineffectiveness claims, the sum of his argument is as follows: Plea Counsel was ineffective for failing to advise him, before the plea, of his correct prior record score, correct gravity point score, and the sentencing guidelines. ***Id.*** at 9. Because he was

"misinformed," his pleas were involuntary, and he "should be allowed to withdraw his pleas." *Id.* at 10. We conclude no relief is due.

Appellant does not address, let alone dispute, any of the PCRA court's several rationales for denying relief, which we determine were supported by the record. *See Timchak*, 69 A.3d 769. The PCRA court extensively reviewed Appellant's and Plea Counsel's PCRA hearing testimony, which differed on some points, including whether Plea Counsel informed Appellant he "would receive no more" than a sentence of four to eight years' imprisonment. *See* PCRA Ct. Op. at 5-8. The court found credible Plea Counsels' testimony that **before** sentencing, she discussed with Appellant his exposure to higher sentencing guidelines if he were designated a RFEL. *See id.* at 12. These credibility determinations are binding on this Court. *See Timchak*, 69 A.3d 769.

Furthermore, the PCRA court considered that, in his plea colloquy, Appellant affirmed that "no promises were made in exchange for his guilty pleas (apart from the Commonwealth's *nolle prosequi* agreement for certain charges)[,]" and "that his guilty pleas exposed him to a maximum aggregate sentence of [40] years' incarceration." PCRA Ct. Op. at 3. At the PCRA hearing, Appellant confirmed that he "understood during the plea colloquy that he faced an aggregate sentence of 40 years' incarceration, not four to eight years' incarceration." *Id.* at 12. Appellant cannot now assert that he believed

he would not receive a sentence greater than four to eight years. *See Timchak*, 69 A.3d at 774.

Additionally, the PCRA court reasoned that regardless of whether Appellant was deemed to have a prior record score of "5" or was a RFEL, his minimum sentence, 72 months, fell within the standard guideline ranges. PCRA Ct. Op. at 4 (guideline range for a prior record score of "5" was 60 to 72 months, plus or minus 12 months, while RFEL guideline range was 72 to 84 months, plus or minus 12 months).

On appeal, Appellant does not address any of this discussion by the PCRA court, which we determine is supported by the record. Furthermore, we emphasize that the court found Plea Counsel's testimony credible, that: (1) while Appellant's prior record score was an issue presented to the sentencing court, regardless of which sentencing range would apply, she advocated for a lower sentence based on the "substantial" mitigation she presented on Appellant's behalf; (2) Plea Counsel advised Appellant that the decision was his as to whether to accept the Commonwealth's plea offer of five-to-10 years **or** enter an open plea, where she would argue for a lower sentence; and (3) meanwhile, Plea Counsel advised Appellant of the possibility that he would be designated a RFEL, in which case he faced higher sentencing guidelines. *See* PCRA Ct. Op. at 6, 12. Incorporating the above discussion, Appellant has not shown that Plea Counsel had no reasonable basis for her actions. *See Timchak*, 69 A.3d at 769.

Finally, we consider Appellant's testimony that once he learned his DNA was discovered on the gun, he decided to plead guilty. N.T., 2/12/21, at 47. On appeal, Appellant presents no claim that but for Plea Counsel's actions, he would have desired to proceed to trial. ***See Rathfon***, 899 A.2d at 370.

## VI. Conclusion

For the foregoing reasons, we conclude the PCRA court did not abuse its discretion in denying Appellant's PCRA claims. Thus, we affirm.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 2/17/2022*