J-S39039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK FORD | : | |
| | : | |
| Appellant | : | No. 3216 EDA 2018 |

Appeal from the PCRA Order Entered October 17, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005785-2013,
CP-51-CR-0005786-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK FORD | : | |
| | : | |
| Appellant | : | No. 558 EDA 2020 |

Appeal from the PCRA Order Entered October 17, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005785-2013,
CP-51-CR-0005786-2013

BEFORE:  LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED SEPTEMBER 28, 2020**

Derrick Ford (Ford) appeals from the order entered in the Court of

Common Pleas of Philadelphia County (PCRA court) dismissing his first petition

---

[*] Retired Senior Judge assigned to the Superior Court.

filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

**I.**

In the early morning hours of April 14, 2013, Ford entered the bedroom of his 13-year-old daughter and sexually assaulted her.  When she began to cry, Ford grabbed her neck.  Ford's wife entered the bedroom to see what was happening.  Ford charged at and punched her.  As she tried to get away, Ford retrieved a BB gun and hit her with it.  As Ford did this, the daughter rushed out of the apartment to get help.  The police soon arrived and arrested Ford.  The daughter later revealed that Ford had molested her for over two years.

Ford was charged in two separate cases.  In the case involving his daughter, Ford was charged with rape, involuntary deviate sexual intercourse (IDSI), aggravated indecent assault, unlawful restraint (serious bodily injury), statutory sexual assault (8-11 years older), sexual assault, incest, false imprisonment, endangering welfare of children, corruption of minors, possessing an instrument of crime (PIC), indecent exposure, indecent assault, simple assault and recklessly endangering another person.[1]  In the case involving his wife, Ford was charged with aggravated assault, unlawful

---

[1]  18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3125(a)(1), 2902(a)(1), 3122.1(a)(2), 3124.1, 4302(a), 2903(a), 4304(a)(1), 6301(a)(1)(i), 907(a), 3127(a), 3126(a)(1), 2701(a) and 2705, respectively.

restraint, PIC, terroristic threats, simple assault, recklessly endangering another person and false imprisonment.[2]

In September 2013, the Commonwealth offered Ford a plea agreement on both cases with an agreed-upon sentence of 15 to 30 years' imprisonment. After Ford obtained new counsel in April 2014, the cases were continued for over a year until trial was finally scheduled for October 2015. On October 8, 2015, however, Ford decided to enter an open guilty plea to all of the charges except for statutory sexual assault and PIC in the daughter's case. On February 11, 2016, the trial court imposed an aggregate sentence of 15 to 30 years' imprisonment followed by 5 years of probation. Ford did not appeal.

On October 5, 2016, Ford filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition on March 13, 2017. Among other claims, Ford alleged that plea counsel was ineffective "for providing incorrect advice during the guilty plea stage which caused [Ford] to enter into the plea unknowingly." Ford averred that counsel promised him that he would be sentenced to no more than 4 to 8 years' imprisonment if he pled guilty. Based on this promise, Ford alleged that he was induced into an unknowing guilty plea and would have gone to trial if not for his counsel's incompetent advice.

---

[2] 18 Pa.C.S. §§ 2702(a), 2902(a)(1), 907(a), 2706(a)(1), 2701(a), 2705 and 2903(a), respectively.

On August 30, 2017, the PCRA court held a status hearing. While not granting an evidentiary hearing on his guilty plea claim, the PCRA court granted one on whether counsel was ineffective for not filing a direct appeal. After several delays, the evidentiary hearing was scheduled for October 17, 2018. At the hearing, however, PCRA counsel informed the court that Ford wanted to withdraw his direct appeal claim and file an appeal on his guilty plea claim. When Ford confirmed that was what he wanted, the PCRA court stated it would dismiss the petition. After entry of the order, Ford filed notices of appeal in both cases on November 5, 2018.[3]

On appeal, Ford challenges the PCRA court's denial of his claim that plea counsel was ineffective in advising him to enter an open guilty plea.[4]

_____

[3] Ford filed two notices of appeal but listed both trial docket numbers in the captions. After time-stamping each notice, the trial court sent only the notice of appeal for trial court docket number CP-51-CR-0005786, which we docketed at 3216 EDA 2018. On February 18, 2020, this Court docketed the notice of appeal for trial court docket number CP-51-CR-0005785 at 558 EDA 2020. Both cases were consolidated on August 4, 2020. Additionally, we need not quash this appeal because of both trial court docket numbers being listed in the captions of each notice of appeal. *See Commonwealth v. Johnson*, --- A.3d ---, 2020 WL 3869723, at *4-5 (Pa. Super. July 9, 2020) (*en banc*) (holding that the appellant's filing the correct number of notices of appeal to match the number of trial court cases but listing all of the docket numbers on each notice of appeal did not warrant quashing the appeal).

[4] "Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error." *Commonwealth v. Postie*, 200 A.3d 1015, 1022 (Pa. Super. 2018) (*en banc*) (citation omitted). Further, "[a] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue

**II.**

To prevail on a claim alleging ineffectiveness of counsel, a PCRA

petitioner must demonstrate:

> (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.*[,] there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.

*Commonwealth v. Grayson*, 212 A.3d 1047, 1054 (Pa. Super. 2019)

(citation omitted).

With respect to ineffectiveness claims related to the entry of a guilty

plea, the following principles are applicable:

> [A] criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (citations,

quotation and quotation marks omitted).

---

concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings." *Id*. (citation omitted).

Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. ***Commonwealth v. Timchak***, 69 A.3d 765, 769 (Pa. Super. 2013). The law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty; instead, all that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made. ***Commonwealth v. Anderson***, 995 A.2d 1184, 1192 (Pa. Super. 2010).

When addressing the voluntariness of a guilty plea, we have explained:

> [o]nce a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.

***Commonwealth v. McCauley***, 797 A.2d 920, 922 (Pa. Super. 2001) (citation omitted).

To ensure that a guilty plea is being entered voluntary, knowing and intelligently, trial courts must ask the following questions during their colloquy with the defendant:

> 1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
>
> 2) Is there a factual basis for the plea?

3) Does the defendant understand that he or she has the right to a trial by jury?

4) Does the defendant understand that he or she is presumed innocent until found guilty?

5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?

6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008) (citation omitted). "In determining whether a guilty plea was entered knowingly and voluntarily, ... a court is free to consider the totality of the circumstances surrounding the plea." *Commonwealth v. Flanagan*, 854 A.2d 489, 513 (Pa. 2004) (citation and quotation marks omitted). Additionally, the oral colloquy may be supplemented by a written colloquy that is read, completed and signed by the defendant and then made a part of the plea proceedings. *Commonwealth v. Morrison*, 878 A.2d 102, 108 (Pa. Super. 2005).

## III.

Though he raises two issues, Ford essentially argues that his guilty plea was involuntarily entered on the advice of plea counsel, and that the PCRA court erred in finding there was no material issue of fact on this claim.[5] Ford

---

[5] Ford's first issue alleges there is a genuine issue of material fact as to why he decided to enter an open guilty plea and that an evidentiary hearing should be held to determine why he chose to enter the plea. *See* Ford's Brief at 10-

reasserts that he entered the plea only because his counsel promised him that he would receive a sentence of 4 to 8 years' imprisonment, despite the fact that he was entering an open guilty plea with no agreed-upon sentence.[6] Because such a lenient sentence was unlikely in light of the charges, Ford argues that plea counsel's advice was not within the range of competent advice. Because he relied on this incompetent advice, Ford now argues that he is entitled to withdraw his plea and pursue a jury trial.

Ford's claim, however, is belied by his written and oral colloquies. In particular, Ford's oral colloquy with the trial court at the guilty plea hearing dispelled any notions that he would receive a lenient sentence for pleading guilty to sexually assaulting his daughter and then assaulting his wife when she tried to stop him.

Significantly, early in the hearing, the trial court asked the Commonwealth if there had been any plea offers:

> THE COURT: [W]as there an offer for a negotiated plea in this case?
>
> [DA]: Yes, Your Honor. The offer was back in -- it was made and conveyed and rejected in September of 2013. It was an offer for ten to 20 years, I believe. Ten to 15 years. I mean, ten to 25 years -- 15 to 30. I'm sorry; it was 15 to 30, plus five years

_____

12. This issue, however, does not raise a cognizable claim of ineffectiveness that would warrant an evidentiary hearing.

[6] Ford asserts in his brief that he rejected the Commonwealth's initial plea offer based on plea counsel's advice. *See* Ford's Brief at 14, 25. Plea counsel, however, did not enter his appearance until April 2014, which would have been after the plea was rejected in 2013.

reporting probation. That was the pre-trial offer, that was rejected already.

THE COURT: Fifteen to 30 years was the offer. Mr. Ford, did you know about that offer?

THE DEFENDANT: Yes, sir.

THE COURT: And you didn't want that offer, you didn't want 15 to 30; right?

THE DEFENDANT: No, sir.

THE COURT: What you're doing, is, you're pleading guilty to a ridiculous number of charges. I don't know why the DA won't reduce the number of charges, but she's insisting on all the counts on both transcripts.

N.T., 10/8/15, at 7-8.

Following this, Ford confirmed that he wished to plead guilty and that he understood that sentencing would be at the court's discretion and that he had not been promised anything; had not been threatened; had not been coerced to enter his plea; and understood that he was waiving his right to trial by entering the plea. *Id*. at 9-12.

The Commonwealth then gave a summary of the underlying facts of Ford's guilty plea. After describing Ford's sexual assault of his daughter, the trial court interrupted.

THE COURT: We can stop right there. You'd be much better off taking the DA's offer. I mean, 15 to 30 is really a gift, considering the facts of this case.

[DA]: Your Honor, that offer's off the table.

THE COURT: No, he can still plead guilty to that.

> [DA]: No, Your Honor, that was rejected over two years ago. The Commonwealth has done preparation on the case, and that offer is gone.
>
> THE COURT: So if he pled guilty today, what would the offer be?
>
> [DA]: There is no offer, he's pleading open.
>
> THE COURT: So the offer disappears and -- well, maybe you should think about going to trial, because, if you plead open, I'm going to give you -- I mean, I still have to listen to what both sides have to present.
>
> [DA]: I haven't finished the facts yet.
>
> THE COURT: It doesn't matter. That age, what he did to her, and he's admitting that he did it, you really have to go to prison for a very long time. So do we have a trial date?

*Id*. at 14-15.

However, when the trial court continued to explore whether Ford would be better off going to trial than pleading guilty, plea counsel clarified that they did not want to pursue a trial.

> [PLEA COUNSEL]: Your Honor, my client still wants to plea open. He doesn't believe he would be able to win a trial. And I think it would be a much higher sentence at that point.
>
> THE COURT: All right. As long as he understands, I don't want you to come in for sentencing and say you're surprised. Like I said, I'll still keep an open mind. Your lawyer can present whatever he wants. You can make whatever argument you want to make, but 15 to 30 is not a bad number for what you're pleading to.

*Id*. at 16-17. After this exchange, the Commonwealth finished its summary of the underlying facts. Ford admitted that he committed all of the acts described, following which the trial court went through each offense with Ford

- 10 -

and confirmed with him all of the offenses to which he wanted to plead guilty. *Id*. at 27-32.

Additionally, in his written colloquies for both cases, Ford acknowledged that he had not been promised anything or forced to plead guilty, and that he was entering an open guilty plea with no agreement as to sentencing. Guilty Plea Colloquy, 10/8/15, at 2-3. The written colloquy contains no indication that Ford was pleading guilty under the expectation that he would receive a sentence of no more than 4 to 8 years' imprisonment.

Against this record, Ford argues that his averments in his written and oral colloquies were not true, and that his guilty plea was involuntary because plea counsel promised him a sentence that was not reflected in the colloquy. As noted above, however, Ford is bound by the statements he made during his guilty plea colloquy and cannot now argue that his statements under oath were false. *See McCauley*, *supra* ("A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.").

Likewise, even if plea counsel misled Ford about what sentence he would receive, the trial court dispelled any misapprehension he may have had about what he could expect at sentencing. Significantly, upon hearing the facts of the case, the trial court stopped the guilty plea to ensure that Ford still wanted to plead guilty instead of going to trial. N.T., 10/8/15, at 14-16. Under these circumstances, even if Ford had been told to expect a sentence of 4 to 8 years'

imprisonment, the trial court made it clear that it considered 15 to 30 years' imprisonment generous in light of the fact that Ford was admitting to raping his 13-year-old daughter. Despite this, Ford never spoke up or told the trial court that he was pleading guilty only because he was expecting a much more lenient sentence than that offered in the plea agreement.

As shown by the record, Ford was well aware that not only was there was no promise as to what he would receive at sentencing, but also that he should expect a sentence equal to or greater than the 15 to 30 years' imprisonment offered two years earlier. Even though the trial court made this clear on the record, Ford still chose to enter the open plea. As noted above, the law does not require that a criminal defendant be completely satisfied with the outcome of his decision to plead guilty; the law requires only that the plea be voluntary, knowing and intelligent. **See Anderson**, **supra**.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/20