J-S44035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELVIN RAFAEL MATEO | : | |
| | : | |
| Appellant | : | No. 1890 MDA 2019 |

Appeal from the PCRA Order Entered October 29, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005730-2015

BEFORE:    BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED: MAY 12, 2022**

Elvin Rafael Mateo (Appellant) appeals *pro se* from the order entered in the York County Court of Common Pleas, dismissing his first, timely Post Conviction Relief Act[1] (PCRA) petition.[2]  Appellant was convicted by a jury of first-degree murder, attempted murder, conspiracy,[3] and related offenses. Appellant now raises various claims that PCRA counsel, whom the PCRA court

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] On February 10, 2021, this panel issued a memorandum allowing Appellant to file an amended brief, after he cited limited or no access to the prison library due to the COVID-19 pandemic.  Thereafter, we granted him five extensions of time, as well as one extension of time to the Commonwealth to file a responsive brief.

[3] 18 Pa.C.S. §§ 2502(a), 901(a), 903(a), respectively.  As we discuss ***infra***, Appellant was tried jointly with Durell Cotton, Jr. (Co-Defendant).

permitted to withdraw under **Turner**/**Finley**,[4] was ineffective for not raising various claims of trial counsel's ineffective assistance. We affirm.

## I. Facts & Procedural History

The Commonwealth alleged that around 10:24 p.m. on October 15, 2013, Appellant and Durrell Herman Cotton, Jr. (Co-Defendant)[5] were in a maroon SUV vehicle when they fired gunshots into an occupied gold Buick Rendezvous vehicle at 128 Jefferson Avenue, York City. The rear seat passenger of the Buick, Jordan Breeland, was shot in the chest and died at the scene. The driver, Davon Brown, sustained "a gunshot to his left hand and a small wound on his right wrist" and survived. Trial Ct. Op., 1/23/17, at 3. The front seat passenger, Timiere Crosby, was not injured. **See id.** at 3.

Shortly after 1:40 a.m. that same night, there was a report of shots fired "in the area of Belvidere and Market Streets." Trial Ct. Op., 1/23/17, at 4. At approximately 2:55 a.m., Pennsylvania State Police Trooper Shawn Panchik "located two possible suspects," for the shooting of Breeland and Brown, in "the area of Hartley and Philadelphia Street[s]." **Id.** The suspects, both wearing black jackets,

> were seen throwing handguns as they fled from police. [They] were apprehended . . . and both handguns were recovered. . . .

---

[4] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[5] At the time of the shooting, Co-Defendant was 17 years old.

Dashboard surveillance [showed that Appellant] attempted to dispose of a .357 Rossi handgun and [Co-Defendant] attempted to dispose of a Smith and Wesson 10 mm handgun. [B]allistic analysis [showed] that a bullet fragment recovered inside the Buick Rendezvous originated from the .357 Rossi firearm.

*Id.* at 4-5. Additionally, gunshot residue was found on both Appellant's and Co-Defendant's clothing and hands. *Id.* at 5.

Later that same day, October 16, 2013, Belinda Akers reported to the Lower Windsor Police Department that the night before, she loaned her vehicle, a maroon Mercury Mountaineer SUV, to a young black male. Trial Ct. Op., 1/23/17, at 5-6.

[One] hour after the shooting [involving the Buick,] the male called a friend of [Akers] and told her where [her maroon SUV] was parked. [Akers] located her vehicle with the [rear window shattered.]

Akers identified [Co-Defendant] from an eight . . . person photo line-up as . . . the black male she loaned her SUV to on the night of the murder.

*Id.* at 6 (paragraph break added).

Meanwhile, a witness to the shooting, Thomas Hoke, heard gunshots and "observed a maroon or red [ ] SUV occupied by two black males [leave] the area of the shooting at a high rate of speed heading towards Philadelphia Street. One of the vehicle's occupants was wearing a black jacket." *See* Trial Ct. Op., 1/23/17, at 5. When shown photographs of Akers' SUV, Hoke said "it appeared to be the same color and body type [as] the vehicle he observed fleeing the scene immediately after the shooting." Trial Ct. Op., 1/23/17, at 6.

One year and nine months after the shooting, in July of 2015, police interviewed Raymond Bruno-Carrasquillo. *See* Trial Ct. Op., 1/23/17, at 6; N.T. Trial Vol. III, 5/18/16, at 430. He had known Appellant and Co-Defendant almost his whole life, and in October of 2013, he was with them "[a]lmost every day," selling drugs together. N.T. Trial Vol. III, 5/18/16, at 407-08, 411.

> Bruno-Carrasquillo was with [Co-Defendant] just prior to the shooting and was with both defendants on later dates where details of the murder were discussed. [Appellant] told Bruno-Carrasquillo that they were "lurking" for targets from the Parkway gang, [which the victims] Breeland and . . . Brown were allegedly associated with. [Bruno-Carrasquillo explained that "lurking" means "rid[ing] around looking for specific targets."[6]]
>
> [Appellant] told Bruno-Carrasquillo that they were in a SUV that [Co-Defendant] "rented" from an addict on the night of the alleged incident. [Appellant] further stated to Bruno-Carrasquillo that they had come across a gold color SUV driven by . . . Brown and [Appellant] had a .357 handgun while [Co-Defendant] possessed a 10mm handgun. **[Appellant] further related to Bruno-Carrasquillo that he had fired into the driver's and passenger side of the vehicle.** Additionally, [Appellant] said that later that same evening police chased both defendants and they attempted to throw away their guns.

Trial Ct. Op., 1/23/17, at 6-7 (paragraph break and emphasis added).

Both Appellant and Co-Defendant were charged with murder, attempted murder, conspiracy, and related offenses. The charges proceeded to a joint, multi-day trial against both defendants, commencing May 16, 2016. Appellant was represented by James Robinson, Esquire (Trial Counsel). Bruno-

---

[6] N.T. Trial Vol. III, 5/18/16, at 418.

Carrasquillo testified as a Commonwealth witness and, pertinently, disclosed he was facing criminal charges in five unrelated matters, hoped his testimony would lead to leniency, but he was not given any promises by the Commonwealth. N.T. Trial Vol. III, 5/18/16, at 408-11.

Neither Appellant nor Co-defendant testified or presented evidence. In closing argument, Trial Counsel argued Appellant acted in self defense, on the theory it was not known "who fired first." N.T. Trial Vol. V, 5/20/16, at 769.

The jury found Appellant guilty of the first-degree murder of Breeland, conspiracy to commit the first-degree murder of Breeland, attempted murder of Brown, and aggravated assault of Brown.[7] On August 29, 2016, the trial court imposed the following sentences: a mandatory life sentence for first-degree murder; a consecutive 20 to 40 years' imprisonment for attempted murder; and a concurrent 20 to 40 years' imprisonment for conspiracy.

Still represented by Trial Counsel, Appellant took a direct appeal to this Court, which affirmed the judgment of sentence on September 22, 2017. *Commonwealth v. Mateo*, 1784 MDA 2016 (unpub. memo) (Pa. Super.

---

[7] 18 Pa.C.S. §§ 2502(a), 903, 901(a), and 2702(a)(1), respectively.

The jury found Co-Defendant guilty of the same offenses. On direct appeal, this Court affirmed his judgment of sentence. *Commonwealth v. Cotton*, 1843 MDA 2016 (unpub. memo) (Pa. Super. Oct. 10, 2017), *appeal denied*, 771 MAL 2017 (Pa. May 8, 2018). Co-Defendant then filed a *habeas corpus* petition as well as a PCRA petition, which were both denied, following a hearing, on November 5, 2021. Co-Defendant's appeal to this Court is currently pending at *Commonwealth v. Cotton*, 1566 MDA 2021.

Sept. 22, 2017), *appeal denied*, 700 MAL 2017 (Pa. March 9, 2018). The Pennsylvania Supreme Court denied his petition for allowance of appeal on March 9, 2018.

## II. PCRA Petition

Appellant filed a *pro se*, timely PCRA petition on March 5, 2019, alleging, *inter alia*: (1) Trial Counsel was ineffective for changing his trial defense from a claim of innocence to self defense; (2) counsel was also ineffective for not requesting severance of trial from Co-Defendant; (3) the trial court erred in admitting Bruno-Carrasquillo's "hearsay" testimony, where this witness "was testifying for favorable consideration" in his own criminal matter, which is "fraud upon the court[;]" and (4) the evidence was insufficient to support the convictions. Appellant's Petition for Post Conviction Relief Pursuant to 42 Pa.C.S. § 9541 *seq.*, 3/5/19, at 2-4, 6.

The PCRA court appointed Aaron Holt, Esquire (PCRA Counsel) to represent Appellant. On August 19, 2019, PCRA Counsel filed a ***Turner/Finley*** "no merit" letter and petition to withdraw, averring Appellant's claims lacked merit. On October 9th, the PCRA court granted counsel's petition to withdraw, and issued Pa.R.Crim.P. 907 notice of intent to dismiss the *pro se* PCRA petition without a hearing.

Appellant filed a timely *pro se* response, which, *inter alia*, presented new claims of **PCRA** Counsel's ineffectiveness, for alleged failure to raise various claims of Trial Counsel's ineffectiveness.

On October 29, 2019, the PCRA court issued the underlying order denying Appellant relief, along with an opinion. On November 8th, the court filed a supplemental opinion, addressing the claims of PCRA Counsel's ineffectiveness. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[8]

## III. Statement of Questions Involved

Appellant raises eight issues for our review:

1.)   Whether PCRA Counsel provided ineffective assistance of counsel before the PCRA court.

2.)  Whether PCRA Counsel fell below that required standard [sic] under Pennsylvania law.

3).   Whether trial court erred [in] allowing the admission of hearsay testimony.

4).   Whether there [was] prosecutorial misconduct in allowing testimony knowing to be false [sic].

5).  Whether trial court erred [in] allowing insufficient evidence to support the conviction.

6).  Whether PCRA Counsel was ineffective for failing to raise Trial Counsel's ineffectiveness for changing Appellant's claim from actual innocence to self-defense.

---

[8] The trial court's Rule 1925(b) order, of November 25, 2019, directed Appellant to file a concise statement within 21 days — or by Monday, December 16th. Appellant's statement was entered on the docket December 19th, three days thereafter. Nevertheless, the postage on Appellant's envelope is dated December 16th. We thus deem the statement timely filed under the prisoner mailbox rule. ***See Commonwealth v. Chambers***, 35 A.3d 34, 38 (Pa. Super. 2011) ("[I]n the interest of fairness, the prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing.").

7). Whether Trial Counsel was ineffective [for] failing to object to inflammatory remarks of the prosecutor during closing arguments.

8). Whether Trial Counsel [was] ineffective [for] failing to argue issue of sep[a]ration of trial of the defendants.

Appellant's Brief at 6 (unpaginated).[9]

Appellant's discussion does not follow the above same order, and particular arguments for each issue are repeated throughout his brief. Additionally, we observe various claims of trial court error and Trial Counsel's and PCRA Counsel's ineffectiveness arise from the same underlying issue. For ease of discussion, we address separately each underlying issue.

## IV. Standard of Review & Claims of Ineffective Assistance

At this juncture we consider the relevant standard of review:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [a petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.

---

[9] We treat the cover page of Appellant's brief as page 1.

*Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa. Super. 2013) (citations omitted).

## V. *Bradley* & Claims of PCRA Counsel's Ineffective Assistance

We first consider Appellant's assertion that his claims of PCRA Counsel's ineffectiveness are properly before this Court, pursuant to the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). *See* Appellant's Brief at 11.

At the time of the *Bradley* decision, a PCRA petitioner could raise a claim of PCRA counsel's ineffectiveness only in a response to a Rule 907 notice of intent to dismiss a petition without a hearing. *Bradley*, 261 A.3d at 397-98, *citing Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009). The *Bradley* Court expanded the manner in which a claim of PCRA counsel's ineffectiveness may be raised, by holding such claim may also be raised "at the first opportunity to do so, even when on appeal." *See id.* at 401.

Here, Appellant raised claims of PCRA counsel's ineffectiveness in his *pro se* response to the PCRA court's Rule 907 notice. Accordingly, his claims were properly raised under the already-existing case authority. *Bradley*, which addressed ineffectiveness claims raised **for the first time** on appeal, is not implicated.[10]

---

[10] Furthermore, whereas Appellant raised his *pro se* claims after his appointed counsel was permitted to withdraw under *Turner*/*Finley*, the petitioner in *Bradley* was represented by new PCRA counsel. *See Bradley*, 261 A.3d at 384. *Amici* in the *Bradley* appeal suggested that "in a *Turner*/*Finley* no-merit situation, the PCRA court should have discretion to appoint new counsel

## VI. Severance of Trial from Co-Defendant

Appellant avers Trial Counsel was ineffective for not seeking, despite his request, a severance of trial from Co-Defendant. In support, Appellant advances the following arguments. Bruno-Carrasquillo, "the Commonwealth's star witness," gave "hearsay testimony, in addition to a full admission that he . . . had an open criminal case and was only testifying for favorable consideration[.]" Appellant's Brief at 11. Additionally, "The majority of the evidence presented had nothing to do with [A]ppellant and [he] was prejudiced by the admission of evidence that [was] attributed to his co-defendants [sic]."[11] *Id.* at 17. Appellant also avers PCRA Counsel was ineffective for not raising this particular claim of Trial Counsel's ineffectiveness. *Id.* at 11, 17. No relief is due.

This Court has stated:

> The decision on whether to grant a motion for severance rests within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. Where

---

when appropriate, which, according to *amici*, PCRA courts do not currently possess[.]" *Id.* at 401 n.16. The Supreme Court specifically declined to address such situations: "As this appeal does not involve the distinct ***Turner/Finley*** scenario, we save resolution of this question, including the continued viability of the ***Pitts*** Rule 907 approach in this unique context, for another day." *Id.*

[11] Appellant also argues: (1) "the shooters were both said to be 'dark skinned' African American Males[;]" (2) both "victims were seen shooting up a neighborhood [where A]ppellant did not reside[;]" and (3) Appellant "was not present when the shooting occurred in his neighborhood[.]" Appellant's Brief at 11. Appellant does not provide any further discussion, nor explanation how these alleged facts support a claim of severance of trial.

defendants are charged with conspiracy, there is a strong preference for joint rather than separate trials. Separate trials of co-defendants should be granted "only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice."

***Commonwealth v. Payne***, 760 A.2d 400, 404 (Pa. Super. 2000) (citations omitted).

In denying relief, the PCRA court found:

In the present case, the record reflects that all the charges against both [Appellant] and [Co-Defendant] were identical and arose from the same alleged incident. Severance would have resulted in unnecessary repetition because many of the same witnesses would testify and the evidence was essentially the same for both [Appellant] and [Co-Defendant. Appellant] does not provide any justification to warrant a separate trial[.] Therefore, there would have been no merit in a motion for severance. A reasonable attorney would not file a meritless motion. All three prongs under [the] test for an allegation of ineffective assistance of counsel fail . . .

PCRA Ct. Op., 10/28/19, at 6-7.

Appellant fails to address the PCRA court's analysis. Furthermore, while he repeatedly focuses on the witness Bruno-Carrasquillo, which we address in fuller detail in the next section, the admission of his testimony, alone, would not warrant severance. Contrary to Appellant's summation of Bruno-Carrasquillo's trial testimony, the witness **did** directly implicate Appellant in the shooting. Bruno-Carrasquillo testified to all of the following: he, Appellant, and Co-Defendant, collectively, had a dispute with people from "the Parkway side." N.T. Trial Vol. III, 5/18/16, at 413. Prior to the shooting, Appellant told the group he would "go out [to] Parkway and shoot anybody . . .

associated with" them. *Id.* at 418. After the shooting, Appellant told Bruno-Carrasquillo that he and Co-Defendant "were out lurking," meaning "rid[ing] around looking for specific targets," and ran into Breeland and Brown, who were in a gold SUV. *Id.* at 418, 424. Appellant "**said he shot into the driver's side then shot into the passenger side**." *Id.* at 424 (emphasis added).

We thus reject Appellant's present claim, that "[t]he majority of the evidence presented had nothing to do with" him, as patently meritless. *See* Appellant's Brief at 17. We agree with the PCRA court that Appellant has failed to establish either Trial Counsel's or PCRA Counsel's ineffectiveness with respect to a motion to sever trial. *See Timchak*, 69 A.3d at 769.

### VII. Trial Testimony of Bruno-Carrasquillo

Next, Appellant avers the trial court erred by allowing hearsay testimony by Bruno-Carrasquillo. As support, Appellant emphasizes Bruno-Carrasquillo "admitted on open record that he had multiple outstanding charges and had expectations of leniency and consideration from the District Attorney in exchange for his testimony against [A]ppellant and [C]o-Defendant." Appellant's Brief at 12.

We note Appellant's second complaint — that Bruno-Carrasquillo was testifying solely to gain favorable treatment with respect to his own criminal charges — goes to the weight and credibility of his testimony. *See Commonwealth v. Rodriguez*, 174 A.3d 1130, 1139 (Pa. Super. 2017)

(claim — that witnesses were "untrustworthy given the fact that both witnesses sought leniency and/or feared perjury charges if they did not testify favorably for the Commonwealth" — goes to weight of their testimony). In any event, both of the above claims — the admission of Bruno-Carrasquillo's testimony and its weight — "could have been raised before trial, at trial, or on appeal." **See Commonwealth v. Lesko**, 15 A.3d 345, 398 (Pa. 2011), *citing* 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). As these claims are not "raised in terms of prior counsel's ineffectiveness," they are waived. **See Lesko**, 15 A.3d at 398.

Appellant also avers the Commonwealth failed to disclose "that it had a deal" with Bruno-Carrasquillo. Appellant's Brief at 18. Appellant now claims PCRA counsel was ineffective for not raising Trial Counsel's ineffectiveness for not investigating this alleged violation of **Brady v. Maryland**, 373 U.S. 83 (1963).[12]

Contrary to Appellant's repeated insistence, the trial evidence was that while Bruno-Carrasquillo **hoped** for leniency, with respect to his own,

---

[12] To establish a **Brady** violation, a defendant must demonstrate that evidence withheld by the Commonwealth "was favorable to him, because it was either exculpatory or could have been used for impeachment; the prosecution either willfully or inadvertently suppressed the evidence; and prejudice ensued." **Interest of R.D.**, 44 A.3d 657, 675 (Pa. Super. 2012) (citation omitted).

unrelated criminal charges, by testifying at Appellant and Co-Defendant's trial, Bruno-Carrasquillo was not promised anything by the prosecution. **See** N.T. Trial Vol. III, 5/18/16, at 408-11. Appellant provides no explanation in support of his allegations that Bruno-Carrasquillo had a "deal" with the Commonwealth, nor that the Commonwealth withheld this information. Accordingly, no relief is due on Appellant's claim that PCRA Counsel was ineffective for not presenting a claim that Trial Counsel was ineffective for not presenting a **Brady** violation. **See Timchak**, 69 A.3d at 769; **Interest of R.D.**, 44 A.3d at 675.

## VIII. Sufficiency of the Evidence

Appellant contends there was insufficient evidence, direct or circumstantial, to support his convictions. Appellant's Brief at 13. In support, he reasons the "guilty verdict comes sole[l]y upon the reliance of hearsay testimony" and all of the Commonwealth's witnesses, aside from law enforcement, "had hidden motives to testify for personal gain[.]" **Id.** at 13, 14. In any event, Appellant maintains "[t]he irrefutable facts and evidence" show he was not present at the crime scene nor in possession of the murder weapon. **Id.** at 14. Appellant further asserts PCRA counsel failed to raise a claim of Trial Counsel's ineffectiveness for waiving a sufficiency challenge on direct appeal, by failing to specify the elements of the crime. **Id.** at 16. No relief is due. We conclude that no relief is due.

With respect to Appellant's claim that Trial Counsel failed to properly preserve a sufficiency claim, we summarize the following. On direct appeal, Appellant challenged both the sufficiency and weight of the evidence, on the grounds the Commonwealth did not disprove his claim of self-defense. This Court rejected both arguments, adopting the trial court's opinion. **Mateo**, 1784 MDA 2016 (unpub. memo. at 5-6). This Court summarized that the Commonwealth presented an

> abundance of circumstantial evidence and other significant evidence supported finding of guilt beyond reasonable doubt[.] Bruno-Carrasquillo testified Appellant told [him] that, on night of incident, Appellant sought retribution against gang and shot into vehicle [Brown] was driving, shooting [Brown] and [Breeland.] Bruno-Carrasquillo also testified that [C]o-defendant said he drove up to [the victims'] car and Appellant shot into car[.]
>
> Belinda Akers testified she lent her maroon SUV to male, on night of incident, whom she later identified as [C]o-defendant, and he returned the SUV with shattered rear window[. C]o-defendant's cell phone contained text messages from Aker's cell phone about her SUV[.]
>
> Thomas Hoke testified he heard series of gunshots on night of incident and saw maroon or red SUV occupied by two black males drive away at high speed from area of shooting[.]
>
> Detective Gregory Schick testified there were multiple bullet holes in [the victims'] vehicle, while Ms. Akers testified there were no bullet holes in her SUV[. E]vidence established on night of incident, Appellant and [C]o-defendant each dropped guns as they fled on foot from police[.] DNA analyst testified it was highly likely DNA found on gun Appellant dropped was Appellant's DNA[. B]ullet found in [the victims'] car matched gun Appellant dropped[ and] gunshot residue analysis revealed existence of gunshot residue on Appellant's clothing and hands[. The e]vidence and testimony presented were sufficient for jury to determine Appellant's guilt[, and] verdict does not shock court's conscience[.]

*Id.* (paragraph breaks added)

Nevertheless, the panel also concluded Appellant waived his sufficiency of evidence claim for failure to specify, in his Rule 1925(b) statement, which elements of his four convictions the Commonwealth allegedly failed to prove. *Mateo*, 1784 MDA 2016 (unpub. memo. at 6-7). In the case *sub judice*, the PCRA court rejected Appellant's underlying claim that Trial Counsel was ineffective for waiving this issue. The court reasoned Appellant did not prove, by a preponderance of the evidence, that had the issue been properly preserved, there was a reasonable probability the Superior Court would have granted relief. PCRA Ct. Op., 11/8/19, at 7. We agree.

We have addressed Appellant's repeated challenges to Bruno-Carrasquillo's testimony above; this witness clearly disclosed that while he hoped for leniency with regard to his own criminal charges, he was not promised anything by the Commonwealth. In any event, the weight and credibility of his testimony were for the jury to determine. *See Rodriguez*, 174 A.3d at 1140 (jury is free to believe all, part, or none of the witness's testimony). Furthermore, contrary to Appellant's claim that there was no evidence implicating him in the shooting or even placing him at the scene, there was ample circumstantial evidence to support his convictions – which the direct appeal panel itself addressed. We also reiterate that Bruno-Carrasquillo testified Appellant admitted to him that he (Appellant) shot into both the driver's and passenger's sides of the gold SUV. In light of all the

foregoing, we agree with the PCRA court that no relief is due on this claim of counsel's ineffectiveness. **See Timchak**, 69 A.3d at 769.

### IX. Strategy of Self-Defense at Trial

Appellant argues PCRA Counsel was ineffective for not raising a claim of Trial Counsel's ineffectiveness for changing his defense strategy from one of actual innocence to self-defense. Appellant's Brief at 15. Appellant contends he never requested, and Trial Counsel never advised him of, this change. **Id.** Appellant further reasons that a claim of self-defense "placed [him] at the scene" and conceded "that he was the actual shooter." **Id.** Appellant thus suffered prejudice as the fact, that he "was a knowing[ ] participant [in] the crimes," changed the jury's mindset. **Id.** No relief is due.

We incorporate our above discussion regarding the sufficiency of the evidence. Appellant has not established that his underlying claim, that a defense strategy of claiming actual innocence, would have resulted in verdicts of not guilty, has arguable merit. Accordingly, we affirm the denial of relief on this claim.[13]

---

[13] The PCRA court denied relief on the grounds that a "decision to pursue a trial strategy of self-defense, instead of actual innocence, is not an overarching objective or purpose of a defense." PCRA Ct. Op., 10/28/19, at 7. Nevertheless, "[t]his Court may affirm a PCRA court's decision on any grounds if the record supports it." **Commonwealth v. Reed**, 107 A.3d 137, 140 (Pa. Super. 2014).

## X.  Appellant's Remaining Claims

Finally, we briefly address Appellant's remaining claims of PCRA Counsel's ineffectiveness, for not challenging Trial Counsel's alleged failure to: (1) "present character witness [sic;]" (2) "object to the court's response to the jury pertaining to first degree murder that the specific intent to kill doesn't have to be the deceased Jordan Breeland, that it could be any member of the group [sic;]" (3) "cross[-]examin[e] witness Jen Sears about the DNA profile as it could not be 100% from [A]ppellant;" and (4) present "a DNA profile of his own[.]"  ***See*** Appellant's Brief at 17.

Appellant fails to present any further explanation for any of these claims. He does not identify the purported desired "character witness," nor what their testimony would entail.  He does not present any context for the trial court's response to a jury question, nor any discussion of testimony about DNA. Accordingly, these claims are waived for failure to develop them into a cogent discussion.  ***See Commonwealth v. Sepulveda***, 55 A.3d 1108, 1133 (Pa. 2012) (issue waived on PCRA appeal where argument was not developed).

## XI.  Conclusion

As we conclude none of Appellant's issues merits relief, we affirm the order of the PCRA court denying his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2022