J-A12013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA DANIEL ROSS | : | |
| | : | |
| Appellant | : | No. 829 WDA 2021 |

Appeal from the PCRA Order Entered June 21, 2021
In the Court of Common Pleas of Bedford County Criminal Division at
No(s):  CP-05-CR-0000638-2016

BEFORE:    MURRAY, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY McCAFFERY, J.:                     **FILED: MAY 19, 2022**

Joshua Daniel Ross (Appellant) appeals from the order entered in the Bedford County Court of Common Pleas, denying his first, timely Post Conviction Relief Act[1] (PCRA) petition.  Appellant previously pleaded *nolo contendere* to indecent assault of a complainant less than 13 years old[2] (henceforth, indecent assault) and was sentenced to nine months to five years' state imprisonment.  He argues the PCRA court erred in denying relief

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.  This appeal was heard at oral argument, after this Court granted Appellant's application to participate in argument.  **See** Pa.R.A.P. 2311 ("All parties shall submit post conviction relief cases on the briefs unless otherwise directed by the court on its own motion or upon application.").

[2] 18 Pa.C.S. § 3126(a)(7).

on his claims that plea counsel was ineffective for, *inter alia*: (1) failing to accompany Appellant to a pre-polygraph interview, where he made incriminating statements; (2) failing to file a motion to suppress his statements; and (3) advising Appellant to enter an open plea, which would likely result in, at most, a county sentence. We vacate the order denying relief, and remand for the PCRA court for further consideration.

## I. Facts & Procedural History

The Commonwealth alleged that in May of 2016, Appellant, then 19 years old, touched a five-year-old relative's vagina, over her underwear. Appellant retained Phillip Robertson, Esquire (Plea Counsel). **See** N.T. PCRA H'rg, 12/29/20, at 10-11. Plea Counsel made an agreement with the Commonwealth that if Appellant "passed" a polygraph test, charges would not be filed.[3] N.T. PCRA H'rg, 8/28/20, at 16. Plea Counsel understood that an officer would conduct a pre-polygraph interview, that included questions about the underlying incident. Plea Counsel believed he was prohibited from attending both the pre-polygraph interview and the polygraph test. As we

---

[3] The Commonwealth acknowledged, in the PCRA proceedings, that any polygraph results or statements would not have been admissible at trial. **See** N.T. PCRA H'rg, 11/17/20, at 9. **See also Commonwealth v. Hetzel**, 822 A.2d 747, 767 (Pa. Super. 2003) ("The current rule is that 'any reference to a [polygraph test] which raises an inference concerning the guilt or innocence of a defendant is inadmissible.'") (emphasis omitted).

discuss *infra*, however, not only could Plea Counsel have attended the pre-polygraph interview, but he could have set limits to the questioning.

On November 18, 2016, Appellant appeared, without Plea Counsel, at a Pennsylvania State Police barracks to submit to the polygraph test. In the 40-minute pre-polygraph interview with a state police officer, however, Appellant made incriminating statements. Accordingly, the officer did not conduct the polygraph test, and ten days later, Appellant was charged with a single count of indecent assault. We note Appellant was advised of his *Miranda*[4] rights at the pre-polygraph interview. No suppression motion was filed in this matter.

While Plea Counsel continued attempts to negotiate a plea bargain, this case proceeded to jury selection on December 5, 2017. On that day, the Commonwealth informed Plea Counsel it would not agree to any plea deal. N.T., 8/28/20, at 34. Plea Counsel advised Appellant to enter a *nolo contendere* plea and then seek a sentence of probation or county imprisonment, rather than go to trial and risk, if found guilty, a state sentence. *Id.* at 34-35. Appellant pleaded *nolo contendere* to indecent assault that same day. On March 16, 2018, the trial court sentenced Appellant to nine months to five years' imprisonment, to be served in state prison. He was also

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

notified that his conviction carried lifetime registration under the Sex Offender Registration and Notification Act[5] (SORNA).

Appellant filed motions for reconsideration of his sentence and withdrawal of his plea, which were both denied. He took a direct appeal to this Court, arguing the trial court abused its discretion in imposing state imprisonment. This Court denied relief, affirming the judgment of sentence on August 2, 2019. **Commonwealth v. Ross**, 514 WDA 2018 (unpub. memo.) (Pa. Super. Aug. 2, 2019). Appellant did not seek allowance of appeal with the Pennsylvania Supreme Court.

## II. PCRA Petition

On November 18, 2019, Appellant filed the underlying, timely, counseled PCRA petition. He alleged, *inter alia*, ineffective assistance of Plea Counsel for: failing to attend the pre-polygraph interview; failing to file a motion to suppress Appellant's statement; and advising him to enter an open plea and stating he would likely get, at most, a county sentence.[6]

_____

[5] **See** 42 Pa.C.S. §§ 9799.10 to 9799.75. **See also** 42 Pa.C.S. §§ 9799.14(d)(8) (conviction under 18 Pa.C.S. § 3126(a)(7) is a Tier III sexual offense), 9799.15(a)(3) (individual convicted of a Tier III sexual offense shall register for life).

[6] The PCRA petition also raised a claim that Plea Counsel failed to explain that pleading *nolo contendere* would preclude Appellant's eligibility for parole. The PCRA court points out "that the Pennsylvania Board of Probation and Parole will not grant parole until the [defendant] admits to the criminal acts." PCRA Ct. Memorandum Op., 6/21/21, at 9 (PCRA Ct. Op.). The court denied relief,

The PCRA court conducted evidentiary hearings on August 28, November 17, and December 29, 2020.[7] Appellant, Plea Counsel, and State Police Corporal Kimberly Ronan, who conducted the pre-polygraph interview, testified. To provide context to Appellant's claims on appeal, we examine their testimony in detail.

First, Plea Counsel testified to the following. He had practiced criminal defense since 1993, for 27 years. *See* N.T., 8/28/20, at 7. Plea Counsel told Appellant that immediately before the polygraph test, an officer would interview him and ask questions about the underlying incident. *Id.* at 22-23, 49. Plea Counsel believed he was prohibited from attending both the pre-test interview and the polygraph. He explained "[t]he officer" — without identifying who — had told him he "was not allowed to go back in the room [sic] with" Appellant, and on two prior occasions involving a polygraph, he was not permitted to do so.[8] *Id.* at 15, 51, 62. Plea Counsel thus told Appellant he could "meet [him] at the front of the building," but could not accompany

_____

reasoning it is not Appellant's past *nolo contendere* plea that prevents parole, but rather his "present decision to not admit to the allegations[.]" *Id.*

[7] Appellant, who remains incarcerated, appeared at the first two hearings by video. At the December 29, 2020, hearing, he appeared and testified in-person.

[8] It appears that at the time of his August 2020 PCRA testimony, Plea Counsel continued to believe that no attorney could attend a pre-polygraph interview. *See* N.T., 8/28/20, at 15 ("If you are [allowed to attend the pre-polygraph interview,] tell me the secret because they don't let me back there.").

him during the questioning. *Id.* at 14, 16-17. Plea Counsel was aware Appellant had "social interaction disabilities," including Asperger's syndrome, and advised him to "[j]ust be calm, relax, and tell the truth." *Id.* at 18, 23, 38. He believed Appellant could "take the test without any problems[.]" *Id.* at 54. However, at another point in the testimony, Plea Counsel stated he had advised Appellant to "always have counsel with him if he's going to talk to the police." *Id.* at 10.

On November 18, 2016, the day of the scheduled polygraph, Plea Counsel informed Appellant he could not meet him.[9] N.T., 8/28/20, at 17. Plea Counsel believed he told Appellant it was "up to" Appellant whether to reschedule. *Id.* at 17-18. Appellant proceeded with the pre-polygraph interview that day.

Subsequently, Plea Counsel viewed a video of the pre-polygraph interview, which was approximately 40 minutes long. N.T., 8/28/20, at 18. Plea Counsel characterized the officer as asking "leading questions," and telling Appellant, "You did it. Why don't you just confess?" *Id.* at 24, 64. In the video, Appellant initially denied that he inappropriately touched a girl, but after approximately 30 minutes, said, "Yes, I did it one time," and, "[I]t was just the one time over the underwear." *Id.* at 21-22, 24. Appellant told Plea

---

[9] At the PCRA hearing, Plea Counsel could not remember the reason why he could not attend, but stated it was likely due to a court hearing. N.T., 8/28/20, at 17.

Counsel he made the statements because: he was nervous; the officer told him it would be "a shame to put the little girl through this;" and Appellant believed that if he said what the officer "wanted to hear[,] he could leave because he was tired of being questioned." *Id.* at 25, 28. Plea Counsel "was shocked that he confessed." *Id.* at 24-25. Counsel also did not anticipate the pre-polygraph interview would be conducted in that manner, and agreed that what he had prepared Appellant for, in terms of the pre-polygraph interview, "was not what [Appellant] got from the" officer. *Id.* at 64.

With respect to his decision not to file a suppression motion, Plea Counsel stated, without further explanation, he "did not think that we had a high level of success." *See* N.T., 8/28/20, at 31. Plea Counsel also explained he was attempting to secure a plea deal, and "[t]here would be no chance to enter into any type of plea discussions" if he filed a suppression motion. *Id.* at 33. However, Plea Counsel agreed that, in "[l]ooking back on it," when he advised Appellant to enter an **open** plea, this reason for not filing a suppression motion — negotiating a plea deal — no longer existed. *Id.* at 33-34.

Finally, Plea Counsel testified that he advised Appellant it was in his best interest to enter an open plea. N.T., 8/28/20, at 35. The standard range sentence for Appellant's charge was restorative sanctions to nine months' imprisonment. *Id.* Counsel believed that between entering a plea, "the facts of the case," including the victim being a relative, and Appellant's two years

of counseling, he would likely receive probation or a county sentence. *Id.* at 35-36. Nevertheless, Plea Counsel maintained that he told Appellant "there's always the possibility" the trial court could impose a state sentence. *Id.* at 36.

State Police Corporal Ronan testified to the following. There was no State Police policy prohibiting an attorney from attending a pre-polygraph interview or the polygraph test itself. N.T., 11/17/20, at 15, 26. However, Corporal Ronan herself does not permit attorneys to participate in the **polygraph**, although "some polygraph examiners . . . allow it." *Id.* at 26, 28. On the other hand, Corporal Ronan does allow attorneys to attend the **pre-polygraph** interview, as well as set "parameters" on what she can ask the suspect about. *Id.* at 16. Some attorneys are only present for "the reading of the *Miranda*" rights, while some stay for the discussion of the case, and other attorneys discuss the questions she will ask. *Id.* at 15, 28. In this matter, Plea Counsel was permitted to attend the pre-polygraph interview with Appellant. *Id.* at 15, 26.

Corporal Ronan further testified the pre-polygraph interview covers biographical information, and it allows her to "get[ ] to know" the suspect and "prepare the questions for the polygraph." N.T., 11/17/20, at 14-15, 40. The interview also includes questions about the case itself. *Id.* at 15. Corporal Ronan acknowledged a pre-polygraph interview can evolve into an interrogation, which she described as "more one-sided[,]" "where you . . .

don't let that person talk[,]" and instead "constantly" "just talk[ ] about the case itself and the person just keeps denying it and . . . you keep trying to get the confession from them."[10] *Id.* at 17, 41. Here, Appellant initially denied the charges, but presented "indications," which Corporal Ronan believed to show "he was being deceptive." *Id.* at 40, 46. The corporal did not deny that she "continued to pepper him with questions[,]" stated, "It's not like [you] hurt her. [You] didn't mean to hurt her," and "at one point in time[, asked,] Why don't you just say it?" *Id.* at 46-48. She agreed these questions amounted to an interrogation. *Id.* at 48. Because Appellant "confessed," she did not proceed with the polygraph. *Id.* at 30.

Finally, Appellant testified to the following. Previously, he attended an online charter high school, as he was bullied and had ADHD. N.T., 12/29/20, at 9-10. Appellant was also "on the borderline of autism[, with] Asperger's Syndrome" and took medication. *Id.* at 16-17. He described that he would feel nervous if someone bumped into him, and if someone repeatedly suggested, "[L]et's go to the store or something[,]" despite his protestations, he would "give in just to have them shut up so [he] could have some [peace] of . . . mind." *Id.* at 18.

---

[10] Corporal Ronan also stated that an interrogation is usually conducted "after [a person] fail[s] the exam." N.T., 11/17/20, at 41.

In June of 2016, his cousin, or his cousin's "ex," accused him of inappropriately touching their five year old child several weeks earlier, around the time of Appellant's 19th birthday. N.T., 12/29/20, at 7-8. At that time, Appellant was living with his parents. *Id.* at 9. In September of 2016, Appellant had an interview with the State Police, with Plea Counsel present, in which he denied touching the child. *Id.* at 11-12.

Plea Counsel suggested he submit to a polygraph test, which could not be used in court; if Appellant "pass[ed,]" there "probably would be no charges against" him. N.T., 12/29/20, at 13. Appellant agreed, but Plea Counsel did not "discuss what [the] process would look like[.]" *Id.* at 13. Plea Counsel was going to meet him for the polygraph, but approximately one hour beforehand, Plea Counsel informed him he could not attend, due to "a land dispute somewhere else[,]" and asked if he "wanted to still go ahead with it" by himself. *Id.* at 14-15. Plea Counsel also told Appellant "it wouldn't really matter if he would be there because [Appellant] would do fine without him." *Id.* at 14.

In the pre-polygraph interview, Appellant denied multiple times that he touched the child. N.T., 12/29/20, at 20. However, "after at least a half hour" of questioning, the officer "asked [him] to just acknowledge and admit that" he inappropriately touched her. *Id.* at 19. In response, Appellant "said: Yeah, I did." *Id.* When asked why he said this, Appellant replied,

> I just wanted to get it over with, just to get out. Because they
> said if I . . . would pass it [sic] . . . then I wouldn't have anything

- 10 -

to do with it. And I was just nervous. I just wanted to go back home because . . . my sister came over. So, I just wanted to hang out with my family and just have a nice day before Thanksgiving.

*Id.* at 19-20.

Appellant wished to proceed to trial and deny the charges because was innocent of the charges. N.T., 12/29/20, at 22. However, on the day of jury selection, Plea Counsel advised that pleading "would be the best thing to do" to get probation or a county sentence, and that if he went to trial instead and were found guilty, he would get a state sentence of five years. *Id.* at 22, 24-26. Appellant had to decide "right then and there." *Id.* at 27-28.

At the time of the December 2020 PCRA hearing, Appellant had been incarcerated approximately 33 months. N.T., 12/29/20, at 29. He was not eligible for sexual offender treatment because he had not admitted guilt; Appellant also stated, however, that treatment was not currently offered due to the COVID-19 pandemic. *Id.* at 29-31.

Following the last PCRA hearing, both parties filed briefs. On June 21, 2021, the PCRA court entered the underlying order denying Appellant's PCRA petition. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### III. Statement of Questions Presented

Appellant presents three issues for our review, which we have reordered for ease of discussion:

I. The trial court erred and/or abused its discretion in finding that trial counsel was not ineffective for failing to attend [Appellant's] scheduled polygraph examination.

II. The trial court erred and/or abused its discretion in finding that trial counsel was not ineffective for failing to file a motion to suppress Appellant's alleged confession.

III. The trial court erred in finding that Appellant . . . entered a knowing and intelligent plea as a result of trial counsel's advice.

Appellant's Brief at i.

## IV. Standard of Review & Ineffectiveness Claims

We first set forth the relevant standard of review:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [a petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.

*Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa. Super. 2013) (citations omitted).

With respect to a claim that counsel rendered ineffective assistance, our Supreme Court has stated:

[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the

- 12 -

exercise of reasonable professional judgment, [**Strickland v. Washington**, 466 U.S. 668, 690 (1984),] and that the burden to show that counsel's performance was deficient' rests squarely on the defendant[.] It should go without saying that the mere absence of evidence cannot overcome **Strickland's** strong presumption. The reasonableness of counsel's conduct, moreover, is objectively measured, and, the High Court has repeatedly stressed, [s]urmounting **Strickland's** high bar is never an easy task.

[Also,] review of counsel's conduct cannot indulge the distorting effects of hindsight, but instead, counsel's performance must be judged in light of the circumstances as they would have appeared to counsel at the time. **Strickland**, 466 U.S. at 689.

**Commonwealth v. Hill**, 104 A.3d 1220, 1240 (Pa. 2014) (quotation marks and some citations omitted).

It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

[W]ith regard to the prejudice prong, where [a defendant] has entered a guilty plea, [he] must demonstrate "it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial."

**Timchak**, 69 A.3d at 769-70 (citations omitted). A defendant is bound by the statements they make under oath in a plea colloquy, and "may not [later] assert grounds for withdrawing the plea which contradict the statements." **Id.** at 774.

## V. Non-Attendance at Pre-Polygraph Interview

Appellant first challenges the PCRA court's denial of relief on his claim that Plea Counsel was ineffective for failing to attend the pre-polygraph interview. He maintains this interview "escalated into an interrogation" and resulted in incriminating statements. Appellant's Brief at 28. In support, Appellant avers the following. First, his underlying claim has arguable merit, where Plea Counsel was aware Appellant had "mental deficiencies" and would be subjected to questions about the charges, and Plea Counsel had previously advised Appellant "he should always have counsel with him if he's going to talk to the police[.]" *Id.* at 28-29 (record citations omitted). Next, Plea Counsel had no reasonable basis for believing he was prohibited from attending the pre-polygraph interview, and for allowing Appellant to attend it alone. Plea Counsel's mistaken belief was "a serious misapprehension of the law." *Id.* at 29. Finally, Appellant suffered prejudice, as Plea Counsel "could have limited the scope of the questioning" and "would have likely prevented the alleged confession." *Id.* at 30. We remand for the PCRA court to consider this claim.

Here, the PCRA court concluded Plea Counsel was not ineffective for not attending the **polygraph** test:

> It is undisputed that trial counsel had negotiated on [Appellant's] behalf that criminal charges would not be filed if [Appellant] passed the polygraph examination. It is also undisputed that trial counsel would not have been permitted in the room during the polygraph examination[FN] and that [Appellant] knew trial counsel would not be present and still [chose] to go through with the

- 14 -

polygraph examination by himself. Inasmuch as trial counsel had a reasonable strategy for arranging the polygraph examination, that trial counsel credibly testified he believed [Appellant] could perform the examination, that trial counsel could not have been present during the actual examination, and — most pertinent — that [Appellant] chose to attend the polygraph examination after he knew trial counsel was unable to attend, we find that [Appellant] has failed to prove any of the three elements for this claim of ineffectiveness. . . .

_____

[FN] We do recognize that the statement at issue was made prior to the actual examination **when trial counsel could have been present**. We are merely pointing out that the fact that trial counsel could not have been present during the examination that it should be factored into trial counsel's decision to permit [Appellant] to proceed.

PCRA Ct. Op. at 7-8 & n.2 (emphasis added).

The PCRA court, however, did not address Appellant's claim that Plea Counsel should have attended the **pre-polygraph** interview and/or set parameters on the questions that could have been asked. While the PCRA court emphasized that Appellant knew Plea Counsel could not attend the **polygraph** test itself but nevertheless opted to go alone, this discussion ignored the gist of Appellant's claim — that Plea Counsel should have attended the **pre-polygraph** interview. As the court acknowledged in the footnote, the pre-polygraph interview — and not any polygraph test itself — is where Appellant made the incriminating statement. Indeed, Corporal Ronan decided to forego the polygraph test once Appellant "admitted to touching the victim." N.T., 11/17/20, at 30.

Furthermore, the PCRA court credited Corporal Ronan's testimony that Plea Counsel "could have been present" for the pre-polygraph interview.[11] *See* PCRA Ct. Op. at 7 n.2. However, its opinion is silent on counsel's reasons for not attending it, and whether such action impacted Appellant's statements or his case. In the absence of any discussion or a ruling on this particular claim, we vacate the underlying order denying Appellant's PCRA petition. We remand to the PCRA court to determine, on the basis of the PCRA evidence presented and the parties' briefs: whether Appellant's underlying claim has arguable merit; whether Plea Counsel had a reasonable basis for believing he was not permitted to attend, and in fact not attending, the pre-polygraph interview; and whether Plea Counsel's absence, as well as any decision to not set parameters to the questions, prejudiced Appellant. *See Timchak*, 69 A.3d at 769.

## VI. Non-Filing of a Suppression Motion

In his second issue, Appellant avers the PCRA court erred in denying relief on his claim that Plea Counsel was ineffective for not filing a motion to suppress his alleged confession. We first note:

> "[T]he failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel." "However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to

---

[11] We note we have not discovered any statute or decisional authority concerning an individual's right to have counsel present at a pre-polygraph interview.

- 16 -

so move." "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable."

*Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016) (citations omitted).

When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession. The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily.

*Commonwealth v. Harrell*, 65 A.3d 420, 434 (Pa. Super. 2013) (citations omitted).

In support of his claim, Appellant presents the following arguments. First, there was "[a] colorable argument" Appellant's confession should have been suppressed because it was not voluntarily made. Appellant's Brief at 21. Viewing the totality of the circumstances, the pre-polygraph interview "quickly escalated into an interrogation," where "Corporal Ronan asked primarily leading, suggestive, and coercive questions designed to elicit an incriminating statement[.]" *Id.* at 23. Plea Counsel himself testified the pre-polygraph interview went "beyond [his] expectations . . . and that Appellant . . . effectively walked into a situation that [Plea Counsel] did not adequately prepare him for." *Id.* at 23-24. Second, Plea Counsel had no reasonable

- 17 -

basis for not filing a suppression motion. Counsel's stated reason — that "he was trying to work with the [Commonwealth] to secure a plea bargain" — was negated by the Commonwealth's advisement, on the day of jury selection, that it would not make a plea deal. *Id.* at 26-27. Indeed, once Plea Counsel advised Appellant to enter an **open** plea, plea negotiations were no longer a factor. Finally, Appellant was prejudiced, as a successful suppression motion would have precluded the admission of his alleged confession. We remand this issue to the PCRA court to consider along with the first issue.

In denying relief, the PCRA court reasoned:

> [Plea] counsel testified that he did discuss the possibility of filing [a suppression] motion with [Appellant], but decided against it since [Plea] counsel did not believe there was a likelihood of success. In addition, [Plea] counsel believed that filing pre-trial motions would have negatively impacted the plea negotiations and offers he would receive from the Commonwealth. We find [Plea] counsel credible on these points and therefore find that [Appellant] has failed to prove the elements for ineffectiveness. In our view, [Plea] counsel had a reasonable assessment of the likelihood of success for any suppression motion and, moreover, strategically decided not to file said motion in a reasonable attempt to obtain a better plea offer on behalf of [Appellant.]

PCRA Ct. Op. at 8-9 (footnote omitted).

At the PCRA hearing, Plea Counsel did not provide any explanation for his summation that a suppression motion would not have "had a high level of success." *See* N.T., 8/28/20, at 31. The PCRA court, however, stated it

> share[d Plea] counsel's assessment of the likelihood of success on any motion to suppress. [Appellant] was not in custody, read his *Miranda* rights, and his statements were, based upon a totality of the circumstances, voluntarily made. . . .

- 18 -

PCRA Ct. Op. at 9 n.3. In any event, we conclude the merits of any suppression motion should be assessed along with his first claim — that the statements Appellant made were affected by Plea Counsel's non-participation at the pre-polygraph interview. On remand, the PCRA court shall consider this claim of ineffective assistance, pertaining to a suppression motion, along with the Appellant's claim concerning Plea Counsel's non-participation at the pre-polygraph interview.

## VII. Advice to Enter an Open Plea

In his last issue, Appellant challenges the PCRA court's denial of relief on his claim that Plea Counsel was ineffective for advising him to enter an open plea. Appellant contends that an open plea left "the discretion in sentencing recommendation completely to the prosecution." Appellant's Brief at 17. He further claims Plea Counsel "affirmatively misled" him as to the unlikelihood of a state sentence, and gave "inaccurate, incompetent advice" that any prison time would be a "county sentence at worst," "given the nature of the charge and the lack of sentencing agreement in place." *Id.* at 9, 17. Appellant faults counsel's belief that his two years of counseling, along with the entry of a plea, would mitigate his sentence "to the point that state incarceration was almost impossible." *Id.* at 17. Appellant maintains counsel had no reasonable basis for advising him to enter an open plea, and furthermore, that he was prejudiced, as he would not have pleaded if he understood the consequences. *Id.* at 18-19. We likewise remand this issue.

Here, the PCRA court credited Plea Counsel's testimony "that he told [Appellant] he hoped to avoid a state sentence, but did not promise he would receive a county sentence." PCRA Ct. Op. at 10-11. ***See Timchak***, 69 A.3d at 769 (PCRA court's credibility determinations are binding on this Court, where there is record support). Furthermore, the court pointed out that in his written plea colloquy, Appellant acknowledged he could be imprisoned up to five years.[12] ***See*** Guilty Plea Colloquy, 12/5/17, at 1 (unpaginated). ***See also Timchak***, 69 A.3d at 774 (defendant is bound by the statements they make under oath in a plea colloquy).

Nevertheless, given our remand for the PCRA court to consider Appellant's first two claims, we likewise remand this issue for the court, so that all three issues may be considered addressed together.

## VIII. Conclusion

For the foregoing reasons, we vacate the order of the PCRA court denying Appellant's PCRA petition. We remand to the PCRA court to consider the issues as we have discussed above. The court may conduct further proceedings or direct the parties to file supplemental pleadings.

Order vacated. Case remanded. Jurisdiction relinquished.

---

[12] At the plea hearing, the trial court advised Appellant his "maximum sentence" could be 23.5 to 35 years. N.T. Plea H'rg, 12/5/17, at 3. Nevertheless, the written colloquy stated the correct maximum sentence of 5 years.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  05/19/2022